JOHN J. FLYNN III (SBN 76419)
NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
18101 Von Karman Avenue, Suite 1800
Irvine, California 92612-0177
Telephone: (949) 833-7800
Facsimile: (949) 833-7878
E-mail: jflynn@nossaman.com

Attorneys for Plaintiffs
SPRINT SPECTRUM L.P., a Delaware limited partnership;
SPRINT SPECTRUM REALTY COMPANY, L.P., a Delaware limited partnership

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT SPECTRUM L.P., a Delaware limited partnership; SPRINT SPECTRUM REALTY COMPANY, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO; BOARD OF SUPERVISORS FOR THE COUNTY OF SAN MATEO, its governing body; MARK CHURCH, in his official capacity as Board Member of the Board of Supervisors for the County of San Mateo; JERRY HILL, in his official capacity as Board Member of the Board of Supervisors for the County of San Mateo; RICH GORDON, in his official capacity as Board Member of the Board of Supervisors for the of the County of San Mateo; ROSE GIBSON, in her official capacity as Board Member of the Board of Supervisors for the County of San Mateo; ADRIENNE TISSIER, in her official capacity as Board Member of the Board of Supervisors for the County of San Mateo; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: C-08-00342 CW<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) Violation of 47 U.S.C. § 332(c)(7)(B)(iii);**<br><br>**(2) Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);**<br><br>**(3) Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I);**<br><br>**(4) Violation of 47 U.S.C. § 253(a);**<br><br>**(5) Violation of Supremacy Clause;**<br><br>**(6) Declaratory Relief; and**<br><br>**(7) Writ of Mandate** |

284002_3.DOC

FIRST AMENDED COMPLAINT

Plaintiffs Sprint Spectrum L.P., a Delaware limited partnership, and Sprint Spectrum Realty Company, L.P., a Delaware limited partnership, (collectively "Sprint") allege as follows:

## BRIEF SUMMARY

1. Sprint brings this action to seek redress for the defendants' violation of the Federal Telecommunications Act of 1996 ("Telecom Act"), arising from defendants' denial of Sprint's application for a renewal permit authorizing Sprint to maintain and operate a wireless telecommunications facility at 1175 Palomar Drive, Redwood City, California.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, 1367(a) and 2202, and 47 U.S.C. §§ 253 and 332. Venue is proper in this Court under 28 U.S.C. § 1391(b) in that the defendants reside in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## THE PARTIES

3. Plaintiff Sprint Spectrum L.P. is a Delaware limited partnership, organized under the laws of the State of Delaware, with its principal place of business in Overland Park, Kansas.

4. Plaintiff Sprint Spectrum Realty Company, L.P. is a Delaware limited partnership, organized under the laws of the State of Delaware, with its principal place of business in the State of Kansas.

5. Defendant County of San Mateo is a county of the State of California, located in this district, with its principal place of business in this district.

6. Defendant Board of Supervisors for the County of San Mateo is the governing and legislative body of the County.

7. Sprint is informed and believes that defendant Mark Church is a Board Member of the County, and resides in the State of California in this district.

8. Sprint is informed and believes that defendant Jerry Hill is a Board Member

of the County, and resides in the State of California in this district.

9. Sprint is informed and believes that defendant Rich Gordon is a Board Member of the County, and resides in the State of California in this district.

10. Sprint is informed and believes that defendant Rose Gibson is a Board Member of the County, and resides in the State of California in this district.

11. Sprint is informed and believes that defendant Adrienne Tissier is a Board Member of the County, and resides in the State of California in this district.

12. The true names and capacities of defendants sued as Does 1-10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Sprint at this time, which therefore sues them by such fictitious names. Sprint will seek leave of Court to amend this complaint to show their true names and capacities when they have been ascertained. Each of the defendant Does 1-10, inclusive, is in some way responsible for the wrongful acts alleged herein.

13. Sprint is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the defendants, including the Doe defendants, were the agents, joint venturers, partners, servants, and/or employees of each of the other defendants and each was acting within the scope of its authority as such agent, joint venturer, partner, servant, and/or employee, with the permission and consent of the defendants, and each of them.

## THE TELECOM ACT

14. By enacting the Telecom Act, Congress sought to promote the rapid deployment of advanced communications services and to make such services available everywhere in the country by creating a pro-competitive and de-regulated environment. In furtherance of this goal, the Telecom Act protects the ability of telecommunications service providers to deploy their systems nationwide and vests substantial jurisdiction over the national telecommunications system in the Federal Communications Commission ("FCC"). The Telecom Act also preempts state and local regulation, with few exceptions, by imposing numerous restrictions on local land use authority:

      a. States and local governments cannot prohibit any carrier from providing telecommunications services;

      b. States and local governments cannot discriminate among providers of functionally equivalent services;

      c. States and local governments cannot regulate placement, construction or modification of wireless service facilities on the basis of radio frequency "RF" emissions as long as the facilities comply with the FCC's RF emissions guidelines;

      d. States and local governments must promptly act on applications to site wireless service facilities; and

      e. States and local governments must support denials in writing with substantial evidence contained in a written record.

## THE IMPORTANCE OF THE TELECOM ACT

15. Wireless telephone service is essential to public safety and convenience. From 1996 to 2006, the number of wireless telephone users has increased more than fivefold -- from 44 million to more than 219 million wireless subscribers. There are now more wireless subscriptions than landline telephone subscriptions in the United States. Sixty-two percent of all Americans and over 90% of those in the 20 to 49 age range own cell phones. For many Americans, cell phones have become an indispensable replacement for traditional landline telephones. As of 2005, approximately 5.5% of all Americans and 14% of 18 to 24 year olds lived in wireless-only households. Even when they maintain both types of telephone service, Americans are opting increasingly to use their cell phones over their landline telephones. From 1996 to 2004, Americans more than quadrupled their time spent talking on their cell phones, while markedly reducing the number of long-distance and local calls made over conventional landlines.

16. For Americans living in wireless-only homes and those outside of their homes, cell phones are often their only lifeline in emergencies. Since 1995, the number of 911 calls made by people using wireless phones has more than doubled, to over 50

million a year. Public safety agencies estimate that approximately 30% of the millions of 911 calls they receive daily are placed from cell phones, and the percentage is growing.

## THE PERMIT

17. In 2000, Sprint submitted an application to the County of San Mateo seeking a conditional use permit ("CUP") for the establishment of an unmanned telecommunication facility, to be located at 1175 Palomar Drive, Redwood City, California ("Property").

18. In November of 2000, Sprint received a letter from the Zoning Hearing Officer for the County of San Mateo conditionally approving the construction, installation and operation of the unmanned telecommunication facility. Although the San Mateo Planning Department approved Sprint's application shortly thereafter, it took nearly seven months for Sprint to receive final project approval.

19. After receiving final approval, Sprint constructed the unmanned telecommunication facility on the Property. During this construction, Sprint's equipment was mistakenly built so that the foundation of one antenna encroached on a neighbor's easement.

20. On October 26, 2005, Sprint received a notice from the County of San Mateo that the CUP was going to expire in less than two weeks. After the CUP expired, the County of San Mateo advised Sprint that if it wanted to continue its use, it could submit an application to renew the CUP instead of an application for a new permit.

21. On February 23, 2006, Sprint submitted to the County of San Mateo an application to renew the CUP. Upon receipt of the application for renewal, the County of San Mateo forwarded the application to an outside planning firm for review and comment.

22. On December 7, 2006, a Zoning Hearing Officer ("Hearing Officer") held a public hearing to consider the renewal of the CUP. The Hearing Officer recommended that the renewal be approved upon Sprint's satisfaction of a few minor conditions. The Hearing Officer made this decision after a thorough review of the report submitted by the

County's planning firm and the materials supporting the application.

23. The report submitted by the County's planning firm concluded that the continued operation of the facility would not be detrimental to the public welfare and that the facility "contributes to an enhanced wireless network for increased clarity, range, and system capacity, and therefore, is a benefit to both public and private users." In reaching these conclusions, the County's planning firm noted that:

    a. County staff had not received any complaints regarding the facility.

    b. An updated measurement of the facility's radio frequency emissions were well below the exposure limit.

    c. The continued operation of the facility would not generate additional traffic, noise, or a more intense use of the property.

24. Based on its conclusions, the County's planning firm recommended that the Hearing Officer adopt the following findings:

    a. "That the establishment, maintenance and/or conducting of the proposed use will not, under the circumstances of the particular case, be detrimental to the public welfare or injurious to property or improvements in said neighborhood."

    b. "That the approval of the wireless telecommunications facility is necessary for the public health, safety, convenience or welfare. This facility contributes to an enhanced wireless network for increased clarity, range, and system capacity, and therefore is a benefit to both public and private users."

25. One of the conditions of the renewal was that Sprint would install landscaping to conceal the telecommunications equipment. In order to allow Sprint time to complete the landscaping, the Hearing Officer continued the hearing to January 18, 2007.

26. Sprint completed the landscaping on December 23, 2006.

27. On January 18, 2007, the Hearing Officer adopted the proposed findings and approved the renewal of the CUP and Sprint's plans to relocate the encroaching telecommunication equipment.

28. Two weeks later, residents of Palomar Park appealed the approval to the County of San Mateo Planning Commission.

29. On April 12, 2007, the County of San Mateo Planning Department granted an emergency permit authorizing the immediate relocation of the encroaching telecommunications equipment. Three days later, Sprint completed the relocation.

30. On May 9, 2007, the Planning Commission held its first hearing on the renewal decision. The staff report for the appeal recommended that the "Commission deny the appeal and uphold the decision of the Zoning Hearing Officer . . . ." The Planning Commission, however, rejected the staff recommendation, and continued the hearing to May 23, 2007, so that the staff could prepare findings supporting the denial of the permit.

31. On May 23, 2007, the Planning Commission held its second hearing on the appeal. As requested by the Planning Commission, the staff prepared a second report purporting to justify a decision denying the permit. This supplemental report identifies two grounds for denying the permit. First, citing Zoning Regulation Section 6105.3, the supplemental report states that Sprint had demonstrated a pattern of non-compliance by failing to timely comply with the conditions of the prior permit. Specifically, the supplemental report identifies Sprint's failure to timely relocate the encroaching equipment, install landscaping to screen the equipment, and submit an application before the expiration of the initial CUP. Second, the supplemental report states there was insufficient evidence to support the claim that the facility was necessary.

32. Zoning Regulation Section 6105.3 provides, in relevant part:

(a) In all instances where the Planning Director or the Chief Building Official has made a determination that a violation exists on a lot proposed for development, and has issued a Notice of Staff Determination of Violation, any hearing held to consider whether to grant or deny the permit for development

shall include consideration of whether such violation exists, as set forth in this section. . . .

(b) At any hearing held to determine whether a permit for development should be granted or denied, the decision maker shall consider whether or not a building or zoning violation is present on the lot. In addition to any other standards of review, findings, or other determinations applicable to the consideration of a permit for development, the presence of a zoning or building violation on a lot proposed for development may provide the basis for denying a permit for development on that lot.

33. Despite the supplemental report, however, there was still insufficient support on the Planning Commission for adoption of a resolution denying the permit. As a result, the Planning Commission continued the hearing to June 13, 2007.

34. On June 13, 2007, the Planning Commission adopted the staff's supplemental findings and a resolution denying the permit, thereby overturning the Hearing Officer's decision. Less than a week later, in conformance with Section 6500 et seq. of the Zoning Regulations for the County of San Mateo, Sprint appealed the Planning Commission's decision to the Board of Supervisors for the County of San Mateo.

35. On October 2, 2007, the Board of Supervisors held a de novo hearing on Sprint's appeal pursuant to Zoning Regulation Section 6504.

36. On December 18, 2007, the Board of Supervisors sent a Notice of Final Decision citing Zoning Regulation Section 6500 and rejecting Sprint's appeal. In an attempt to justify its action, the Board of Supervisors adopted the following findings:

A. That the permit holder, Sprint Spectrum L.P., failed to comply in a timely manner with conditions of approval established in 2000. Specifically, Sprint failed to install

required landscaping and relocate a misplaced pole prior to expiration of the original use permit.  Sprint Spectrum L.P. also failed to submit a request for permit renewal prior to the expiration date of the original permit.

B.   That the permit holder, Sprint Spectrum L.P., failed to show that alternative sites or a combination of sites could not achieve the same results as this site in question.

## FIRST CLAIM FOR RELIEF

## (Violation of 47 U.S.C. § 332(c)(7)(B)(iii):

**No Substantial Evidence -- Against All Defendants, Including the Doe Defendants)**

37.   Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-36, inclusive.

38.   The denial of Sprint's Permit Application was not supported by substantial evidence contained in a written record, and therefore violates 47 U.S.C. § 332(c)(7)(B)(iii).

39.   Sprint's use creates no significant visual or noise impacts.  As the report by the County's planning firm states, "[s]ince this cellular facility was completed in 2001, staff has not received any complaints regarding its operation or maintenance activities associated with it."

40.   Defendants' finding that Sprint did not demonstrate that alternative sites or a combination of sites could achieve the same result is legally irrelevant, since the County's code does not require any showing with respect to such issues; the "failure" to make a showing not required by state of local law cannot, therefore, constitute substantial evidence.

41.   Defendants' findings relating to a failure to comply with conditions of approval established in 2000 are legally irrelevant under Zoning Regulation Section 6500, the only regulation relied on by the Board of Supervisors in their denial.  While not relied on by the Board of Supervisors, defendants may assert that Zoning Regulation

Section 6105.3 supports the denial. In order for Section 6105.3 to be applicable, a violation must be "present" or "exist" at the time of decision. But the decision by the Planning Commission, which was repeated on de novo review by the Board of Supervisors, was based solely on alleged past violations, and defendants never issued to Sprint a formal Notice of Staff Determination of Violation. In addition, putting aside the fact that Section 6105.3 is irrelevant to the Board's decision, defendants are estopped to argue that the past violations provide substantial evidence for the denial because defendants implied to Sprint that a correction of past violations would result in a renewal of the permit, an implication buttressed by the plain language of the Zoning Regulation, on which Sprint reasonably relied in correcting the past violations.

42. For the reasons stated above, and for all other reasons to be established by the record in this case, the decision is not supported by substantial evidence.

43. Sprint has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

## SECOND CLAIM FOR RELIEF

## (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II):

## Prohibition of the Provision of Personal Wireless

## Services -- Against All Defendants, Including the Doe Defendants)

44. Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-36, inclusive.

45. Section 332(c)(7)(B)(i)(II) bars local regulation of the placement, construction, and modification of personal wireless service facilities that prohibits or has the effect of prohibiting the provision of personal wireless services.

46. Sprint's facility is necessary to fill a significant gap in Sprint's coverage in the County. The facility provides the least intrusive means by which to fill the gap, given the values the denial is intended to serve. The actions and omissions described above therefore prohibit and/or have the effect of prohibiting Sprint from providing personal

wireless services in the County, and result in a violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

47. Sprint has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

### THIRD CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I): Discrimination Among Providers of Functionally Equivalent Services -- Against All Defendants, Including the Doe Defendants)**

48. Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-36, inclusive.

49. Sprint is a commercial mobile radio services ("CMRS") provider, as defined by the Telecom Act and provides broadband PCS service on a common carrier basis.

50. Sprint is presently in the process of attempting to deploy its network in the County of San Mateo, by installation and operation of a functional and competitive infrastructure throughout the County.

51. Sprint is informed and believes, and alleges thereon, that defendants have approved similar applications by Sprint's competitors, providers of functionally equivalent services, and that there is no reasonable basis upon which to discriminate between Sprint and its competitors.

52. Sprint has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

### FOURTH CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 253(a):  Prohibition of Provision of Telecommunications Service -- Against All Defendants, Including the Doe Defendants)**

53. Sprint incorporates by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-36, inclusive.

54. The denial of Sprint's application was based on Zoning Regulation Section 6500. In relevant part, Section 6500 states that a CUP may be issued if the use is "found

1  to be necessary for the public health, safety, convenience or welfare . . . ."

2  55.   As applied to Sprint, and other telecommunications providers, Section 6500 purports to confer upon defendants open-ended discretion, resulting in a local legal requirement that prohibits, or has the effect of prohibiting, the ability of a telecommunications service provider, Sprint, to provide telecommunications service. Because of this open-ended discretion, as applied to telecommunications providers, Section 6500, and the findings made pursuant thereto, violate 47 U.S.C. § 253(a).

56.   Sprint has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

## FIFTH CLAIM FOR RELIEF

**(Supremacy Clause -- Against All Defendants, Including the Doe Defendants)**

57.   Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-56, inclusive.

58.   The defendants' actions, policies and ordinances described above violate §§ 332 (c)(7)(B)(iii), 332(c)(7)(B)(i)(II) and 253(a) of the Telecom Act, and are preempted by the Supremacy Clause of the United States Constitution.

59.   Sprint has been injured by the above-described violation of the law, and cannot be adequately compensated in money damages for its injury.

## SIXTH CLAIM FOR RELIEF

**(Declaratory Judgment -- Against All Defendants, Including the Doe Defendants)**

60.   Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-59, inclusive.

61.   An actual controversy exists between the parties in that Sprint has sought to exercise the rights described above and defendants have denied that Sprint has those rights, denied that their actions interfere with those rights, and have sought to exercise authority not vested in them in a manner that deprives Sprint of those rights. Moreover, the enforcement of the requirements described above places Sprint in a dilemma that it was the purpose of the Declaratory Judgment Act to ameliorate, in that compliance with

the unlawful requirements imposed on Sprint will be costly and non-compliance may be even more costly.  The validity of these requirements and defendants' actions are therefore ripe for review.

62.  This controversy lies within the Court's jurisdiction because many of the rights in dispute arise under the laws of the United States, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

### SEVENTH CLAIM FOR RELIEF

**(Writ of Mandate -- Against All Defendants, Including the Doe Defendants)**

63.  Sprint incorporates herein by this reference, as though fully set forth, each and every allegation contained in paragraphs 1-62, inclusive.

64.  By virtue of the acts and omissions described above, and the requirements imposed by defendants, defendants failed to comply with mandatory legal duties to which they are subject, and have abused their discretion.

65.  As a result of the defendants' failure to comply with their mandatory legal duties, and their abuse of discretion, Sprint has been injured in that it has been prevented from developing its telecommunications infrastructure in the County of San Mateo.  This injury continues, and will continue, unless and until defendants are compelled to authorize Sprint's facilities.  Such facilities are necessary to provide full coverage and service to Sprint's customers within the County.

66.  Sprint has a beneficial interest in the issuance of the writ of mandate as the applicant for the permits required to erect its facilities in the County.  Sprint's rights and interests have been adversely affected, and its use and enjoyment of its rights have been denied, and will continue to be denied, until the requisite permits are issued.  Sprint has met all lawful requirements for issuance of those permits and has no adequate remedy at law to obtain the permits.  Sprint therefore is entitled to a writ of mandate by this Court compelling the defendants to issue to Sprint the requested minor conditional use permit and all other permits necessary for the maintenance and operation of Sprint's wireless telecommunications facility.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays judgment as follows:

1. On the First through Fifth Claims for Relief:

For a temporary restraining order, and preliminary and permanent injunctions prohibiting defendants from enforcing the requirements imposed upon the exercise of Sprint's legal rights, and compelling the defendants to comply with their obligations under the law and issue the requested permit to Sprint.

2. On the Sixth Claim for Relief:

For a declaration by the Court that the requirements imposed and relied upon by the defendants, and the actions and omissions described above, violate the relevant provisions of the Telecom Act and the Supremacy Clause of the United States Constitution.

3. On the Seventh Claim for Relief:

A writ of mandate compelling the defendants to comply with their legal duty to issue the requested permit.

4. On all Claims for Relief:

An award of costs and reasonable attorneys' fees, and all other relief that the Court may deem just and proper.

Dated: May 29, 2008

JOHN J. FLYNN III
NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

By: /s/_____
         John J. Flynn III

Attorneys for Plaintiffs
SPRINT SPECTRUM L.P., a Delaware limited partnership; SPRINT SPECTRUM REALTY COMPANY, L.P., a Delaware limited partnership