October 1, 2007

San Mateo County Board of Supervisors
County Government Center
455 County Center, 2nd Floor
Redwood City, California 94063

VIA:  Facsimile: (650) 599-1027,  E-Mail: bos.webmaster@co.sanmateo.ca.us

RE:    **PLN2000-00497 - Use Permit Renewal for Sprint/Nextel Cellular
       Communication Facility: APN:  051-416-040.  Located at 1175 Palomar
       Drive, Redwood City, CA  94062.  Sprint Site # SF33XC598**

On behalf of our client, Sprint/Nextel, the applicant for the above referenced project,
NSA Wireless, Inc. formally requests a 30 day continuance of the Board of Supervisors
hearing scheduled for October 2, 2007 at 11:00AM.

We have not been provided sufficient notice to respond to the County's position and staff
report.  Although the report was dated September, 17, 2007, we and the property owner
did not receive a copy of the staff report until September 27, 2007.  Thank you for your
consideration and cooperation.

Sincerely,

Steven J. Christenson
NSA Wireless, Inc.
(530) 368-0730
Representative for Sprint/Nextel

Cc:    Curtis L. Brook, Property Owner
       Lisa Grote, Director of Community Development

**RECEIVED**

OCT 0 1 2007

**San Mateo County
Planning Division**

**AR 0377**

# San Mateo County Times

c/o ANG Newspapers
477 9th Ave., #110
San Mateo, CA 94402
Legal Advertising
(800) 595-9595 opt.4

COUNTY OF SAN MATEO
455 COUNTY CENTER,ZHO-2ND FLOOR,
REDWOOD CITY CA 94063

# PROOF OF PUBLICATION

### FILE NO.    Misr1010

In the matter of

### 1175 Palomar Drive, Palomar Park

The undersigned deposes that he/she is the Public Notice Advertising Clerk of the SAN MATEO COUNTY TIMES, a newspaper of general circulation as defined by Government Code Section 6000, adjudicated as such by the Superior Court of the State of California, County of San Mateo (Order Nos. 55795 on September 21, 1951), which is published and circulated in said county and state daily (Sunday excepted).

The                    PUBLIC NOTICE

was published in every issue of the SAN MATEO COUNTY TIMES on the following date(s):
**9/22/2007**

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

_____

Public Notice Advertising Clerk

SAN MATEO COUNTY
BOARD OF SUPERVISORS

NOTICE OF PUBLIC HEARING

NOTICE IS HEREBY GIVEN that the San Mateo County Board of Supervisors will hold a public hearing to consider a Use Permit Renewal, pursuant to Section 6500 of the County Zoning Regulations, to allow the continued operation of a cellular communications facility consisting of two 13-foot-tall monopoles and one equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County. (Appeal by the permit holder from decision of the Planning Commission to grant the appeal from the decision of the Zoning Hearing Officer and revoke the use permit.)

The application file number is PLN 2000-00497. The applicant is Sprint Spectrum, L.P. The appellant is NSA Wireless (Steve Christenson). The project is located at 1175 Palomar Drive, Palomar Park.

The Assessor's Parcel Number is 051-416-040.

The application was filed on February 23, 2006.

The hearing will be held as follows:

DATE: October 2, 2007

TIME: 11:00 A.M.

PLACE: Board of Supervisors Chambers
Hall of Justice and Records
400 County Center
Redwood City, California

The meeting will be open to the public and anyone interested may appear and be heard on this matter. Consent items are typically approved without discussion unless a request is made to discuss the item on the regular agenda. All inquiries should be directed to Michael Schaller, Project Planner, Planning Department, 650/363-1849.

John Maltbie, County Manager/
Clerk of the Board
400 County Center,
Redwood City, CA 94063
650/363-4123
**San Mateo County Times, #810631
September 22, 2007**

AR  0378

PROJECT FILE

## SAN MATEO COUNTY BOARD OF SUPERVISORS

### NOTICE OF PUBLIC HEARING

NOTICE IS HEREBY GIVEN that the San Mateo County Board of Supervisors will hold a public hearing to consider a Use Permit Renewal, pursuant to Section 6500 of the County Zoning Regulations, to allow the continued operation of a cellular communications facility consisting of two 13-foot tall monopoles and one equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County. (Appeal by the permit holder from decision of the Planning Commission to grant the appeal from the decision of the Zoning Hearing Officer and revoke the use permit.)

The application file number is PLN 2000-00497.  The applicant is Sprint Spectrum, L.P. The appellant is NSA Wireless (Steve Christenson).  The project is located at 1175 Palomar Drive, Palomar Park.

The Assessor's Parcel Number is 051-416-040.

The application was filed on February 23, 2006.

The hearing will be held as follows:

> DATE:    October 2, 2007
>
> TIME:    11:00 A.M.
>
> PLACE:    Board of Supervisors Chambers
> Hall of Justice and Records
> 400 County Center
> Redwood City, California

The meeting will be open to the public and anyone interested may appear and be heard on this matter.  Consent items are typically approved without discussion unless a request is made to discuss the item on the regular agenda.  All inquiries should be directed to Michael Schaller, Project Planner, Planning Department, 650/363-1849.

John Maltbie, County Manager/Clerk of the Board
400 County Center, Redwood City, CA 94063
650/363-4123

MJS:fc – MJSR1010_WFP.DOC

AR 0379

County of San Mateo

# Planning & Building Department

455 County Center, 2nd Floor
Redwood City, California 94063
650/363-4161  Fax: 650/363-4849

Mail Drop PLN122

plngbldg@co.sanmateo.ca.us

www.co.sanmateo.ca.us/planning

PROJECT FILE

Please reply to:    **Michael Schaller**
(650) 363-1849

June 14, 2007

T. Monroe Cochran
NSA Wireless, Inc
2527 Camino Ramon, Ste. 305
San Ramon, CA 94583

Dear Mr. Cochran:

| Subject: | **File Number PLN2000-00497** |
| Location: | 1175 Palomar Drive, Palomar Park |
| APN: | 051-416-040 |

On June 13, 2007, the San Mateo County Planning Commission considered an appeal of the Use Permit renewal for the above-referenced project.

Based on information provided by Staff and evidence presented at the hearing, the Planning Commission upheld the appeal, and overturned the decision of the Zoning Hearing Officer. In overturning the Zoning Hearing Officer's decision, the Planning Commission adopted the following findings:

1.  Find that the applicant, Sprint Spectrum L.P., has failed to comply in a timely manner with conditions of approval established in 2000. Specifically, the applicant failed to install required landscaping and relocation of a misplaced pole prior to expiration of the original Use Permit. The applicant also failed to submit a request for permit renewal prior to the expiration date of the original permit.

2.  Find that the applicant, Sprint Spectrum L.P., failed to show that alternative sites or combination of sites could not achieve the same results as this site in question because inadequate evidence was submitted to support the conclusion that this cell site is necessary for the public health, safety, convenience, or welfare.

**AR 0380**

T. Monroe Cochran
June 14, 2007
Page 2


Any interested party aggrieved by the determination of the Planning Commission has the right of appeal to the Board of Supervisors within ten (10) business days from such date of determination.  The appeal period for this matter will end at **5:00 p.m. on June 27, 2007.**

If you have questions regarding this matter, please contact the Project Planner listed above.

Sincerely,

Rosario Fernandez
Planning Commission Secretary


Pcd0613R_5rf_Sprint.doc

cc:     Department of Public Works
        Building Inspection
        Environmental Health
        CDF
        Assessor
        Curtis Brooks
        Sally Einspahr
        Richard Landi
        Leon Glahn
        Alicia Torre

**AR  0381**

**AFFIDAVIT OF PUBLICATION**

## HALF MOON BAY REVIEW
### AND PESCADERO PEBBLE

STATE OF CALIFORNIA ⎰ ss.
County of San Mateo

The undersigned declares: That at all times hereinafter mentioned, affiant was a citizen of the United States, over the age of eighteen years, and a resident of said County, and was at and during all said times the principal clerk of the printer and publisher of **HALF MOON BAY REVIEW and Pescadero Pebble**, a newspaper of general circulation printed and published weekly in the county of San Mateo, State of California, that the said **HALF MOON BAY REVIEW and Pescadero Pebble** is and was at all times herein mentioned, a newspaper of general circulation as the term is defined by Sections 6000 and following of the Government Code of the State of California, and, as provided by said sections, is published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and is not devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race or denomination, or for the entertainment or instruction of any number of such classes, professions, trades, callings, races or denominations; that at all times said newspaper had been established, printed and published in said County and State at regular intervals for more than one year preceding the first publication of the notice therein mentioned, that said notice was set in type no smaller than nonpareil and was preceded with words printed in black face type not smaller than nonpareil, describing and expressing in general terms, the purport and character of the notice intended to be given; that the

**NOTICE OF PUBLIC HEARING**
San Mateo County Planning and Building Department
File. #PLN2006-00171

of which the annexed is a printed copy, was published and printed in said news-paper at least **1 week** commencing on the **6th** day of **June, 2007** and ending. on the **6th** day of **June, 2007**.

I declare under penalty of perjury that the foregoing is true and correct.

*Melena Romani*

Dated at Half Moon Bay, California, this **6th** day of **June, 2007.**

---

# PROJECT FILE

**PUBLIC NOTICE          PUBLIC NOTICE**

## NOTICE OF PUBLIC HEARING

SAN MATEO COUNTY PLANNING COMMISSION
MEETING NO. 1462

**Wednesday, June 13, 2007**
**9:00 a.m.**
**Board of Supervisors Chambers**
**400 County Center, Redwood City**

**REGULAR AGENDA**
**9:00 a.m.**

5.     **Owner:**     **Curtis Brooks**
     **Applicant:**    **Sprint Spectrum**
     **Appellant:**    **Palomar Property Owners**
                  **(Richard Landi, President)**
     **File No.:**      **PLN2000-00497**
     **Location:**     1175 Palomar Drive, Palomar Par
     **Assessor's Parcel No.:**    051-416-040

Consideration of findings for the denial of a Use Permit renewal, pursuant to Section 6500 of the San Mateo County Zoning Regulations, such that the application for the continued operation of a cellular communications facility consisting of two 13-foot-tall monopoles and one equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County would be denied. Application filed February 23, 2006. PROJECT PLANNER: Michael Schaller. Telephone: 650/363-1849.

**REGULAR AGENDA**
**9:30 a.m.**

6.     **Owner:**     **TomKat Ranch, LLC**
     **Applicant:**    **Kerry Burke**
     **File No.:**      **PLN2006-00171**
     **Location:**     2997 Pescadero Creek Road, Pescadero
     **Assessor's Parcel No.:**    087-110-010,-020;087-130-020,-030

Consideration of a Coastal Development Permit (CDP), pursuant to Section 6328 of the County Zoning Regulations, to: (1) authorize the construction of a permanent bridge over a destroyed culvert (previously approved with an Emergency CDP), and (2) replace two existing pedestrian bridges across Honsinger Creek, located at 2997 Pescadero Creek Road in the unincorporated Pescadero area of San Mateo County. This project is appealable to the California Coastal Commission. Application filed April 19, 2006. PROJECT PLANNER: Dave Holbrook. Telephone: 650/363-1837.

Published in the Half Moon Bay Review
June 6, 2007.

No. 6733

**AR 0382**

## COUNTY OF SAN MATEO
## PLANNING AND BUILDING DEPARTMENT

**DATE**: May 23, 2007

**TO**:     Planning Commission      PROJECT FILE

**FROM**:   Planning Staff

**SUBJECT**:   <u>SUPPLEMENTAL STAFF REPORT</u>:  Consideration of findings for denial for a Use Permit renewal, pursuant to Section 6500 of the County Zoning Regulations, for a cellular communications facility situated in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County.  (Appeal from decision of the Zoning Hearing Officer to approve this renewal.)

County File Number:  PLN 2000-00497 (Sprint/Nextel)

## BACKGROUND

This item was originally discussed by the Planning Commission on May 9, 2007.  At that time, the Commission indicated that it wished to deny this project.  The item was continued to this date for staff to prepare findings for denial.  Staff has prepared the findings and supporting evidence, which is discussed below.

## DISCUSSION

<u>Issues of Denial</u>

The Planning Commission determined that it could not make the required findings to support renewal of a use permit.  The required findings are that the establishment, maintenance and/or conducting of the use will not, under the circumstances of the particular case, result in a significant impact or be detrimental to the public welfare or injurious to property or improvements in the neighborhood.  Specifically, the Planning Commission identified two issues in their decision to deny this application.  These were:  (1) failure to comply with conditions of approval, and (2) failure to show that alternative sites (for this cellular facility) could not achieve the same results.  These issues are discussed in detail below.

a.    <u>Failure to Comply with Conditions of Approval</u>

**Find that the applicant, Sprint Spectrum L.P., has failed to comply in a timely manner with conditions of approval established in 2000.  Specifically, the applicant failed to install required landscaping and relocation of a misplaced pole prior to**

**AR 0383**

expiration of the original use permit. The applicant also failed to submit a request for permit renewal prior to the expiration date of the original permit. The presence of this violation of the prior permit is grounds for the denial of an application for development under County Zoning Regulations Section 6105.3.

The applicant was required to install landscaping to screen the equipment cabinet area; however, this landscaping was not installed until December 2006, and only after the ZHO continued the renewal until such time as the landscaping had been installed. The pole in question was incorrectly placed on an adjoining property in 2000. The applicant was informed by the Building Inspection Section that the pole was not in compliance with the approved building plans and that no final sign off on the building permit could be issued until the pole was moved to its approved location. The pole was moved on or about May 9, 2007. This permit was initially granted with a 5-year term (November 2, 2005 expiration date). The deadline to submit an application for renewal was May 2, 2005. The applicant did not submit a request for renewal until February 23, 2006; four months after the initial permit had expired. Together, these three items illustrate a pattern of non-compliance by the applicant and constitutes grounds for denial of a development application under Zoning Regulations Section 6105.3.

b.    Failure to Show that Alternative Sites Were Examined

Find that the applicant, Sprint Spectrum L.P., failed to show that alternative sites in the project vicinity could not achieve the same results as this site in question.

The applicant did not provide evidence that alternative sites in the project vicinity were considered, even if more than one site would be required to achieve the same level of coverage. Without this analysis, there is insufficient evidence to support the claim that this cellular facility, at this location, is necessary.

**ATTACHMENTS**

A.    Recommended Findings for Denial
B.    May 9, 2007 Staff Report


MJS:fc – MJSR0553_WFU.DOC

**AR 0384**

Attachment A

County of San Mateo
Planning and Building Department

## RECOMMENDED FINDINGS OF DENIAL

Permit or Project File Number:  PLN 2000-00497

Hearing Date:  May 23, 2007

Prepared By:  Michael Schaller, Senior Planner

For Adoption By:  Planning Commission

## RECOMMENDED FINDINGS OF DENIAL

1.    Find that the applicant, Sprint Spectrum L.P., has failed to comply in a timely manner with conditions of approval established in 2000.  Specifically, the applicant failed to install required landscaping and relocation of a misplaced pole prior to expiration of the original use permit.  The applicant also failed to submit a request for permit renewal prior to the expiration date of the original permit.

2.    Find that the applicant, Sprint Spectrum L.P., failed to show that alternative sites in the project vicinity could not achieve the same results as this site in question.

MJS:fc – MJSR0553_WFU.DOC

AR 0385

Review No.6714

## AFFIDAVIT OF PUBLICATION

## HALF MOON BAY REVIEW
AND PESCADERO PEBBLE

STATE OF CALIFORNIA } ss.

County of San Mateo

The undersigned declares: That at all times hereinafter mentioned, affiant was a citizen of the United States, over the age of eighteen years, and a resident of said County, and was at and during all said times the principal clerk of the printer and publisher **of HALF MOON BAY REVIEW and Pescadero Pebble,** a newspaper of general circulation printed and published weekly in the county of San Mateo, State of California, that the said **HALF MOON BAY REVIEW and Pescadero Pebble** is and was at all times herein mentioned, a newspaper of general circulation as the term is defined by Sections 6000 and following of the Government Code of the State of California, and, as provided by said sections, is published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and is not devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race or denomination, or for the entertainment or instruction of any number of such classes, professions, trades, callings, races or denominations; that at all times said newspaper had been established, printed and published in said County and State at regular intervals for more than one year preceding the first publication of the notice therein mentioned, that said notice was set in type no smaller than nonpareil and was preceded with words printed in black face type not smaller than nonpareil, describing and expressing in general terms, the purport and character of the notice intended to be given; that the

**NOTICE OF PUBLIC HEARING**
SAN MATEO COUNTY PLANNING COMMISSION MTG.NO.1461
File Nos.- PLN2007-00089, PLN2005-00509,

of which the annexed is a printed copy, was published and printed in said news-paper at least **1week** commencing on the **16th** day of **May 2007** and ending, on the **16th** day of **May, 2007.**

I declare under penalty of perjury that the foregoing is true and correct.

................ *Barbara Dennsen* ....................

Dated at Half Moon Bay, California, this **16th** day of **May, 2007.**

SAN MATEO COUNTY
PLANNING DIVISION
2007 MAY 18  P 4: 08
RECEIVED

**AR 0386**

---

PROJECT FILE

PUBLIC NOTICE    PUBLIC NOTICE

**NOTICE OF PUBLIC HEARING**

SAN MATEO COUNTY PLANNING COMMISSION
MEETING NO. 1461

**Wednesday, May 23, 2007**
**9:00 a.m.**
**Board of Supervisors Chambers**
**400 County Center, Redwood City**

**REGULAR AGENDA**
9:00 a.m.

| | | |
|---|---|---|
| 5. | Owner: | **State of California** |
| | Applicant: | **California Department of Parks and Resolution** |
| | File No.: | **PLN2007-00089** |
| | Location: | **Whitehouse Creek at Hwy.1** |
| | Assessor's Parcel No.: | **089-200-180** |

Consideration of a Coastal Development Permit, pursuant to Section 6328.4 of the San Mateo County Zoning Regulations, to allow the removal of an in stream barrier and restoration of habitat in the area downstream of the Highway 1 culvert on Whitehouse Creek. This project is appealable to the California Coastal Commission. Application filed March 8, 2007. PROJECT PLANNER: Michael Schaller. Telephone: 650/363-1849.

9:30 a.m.

| | | |
|---|---|---|
| 6. | Owner: | **Karen Trilevsky** |
| | Appellant: | **Mary Larenas** |
| | File No.: | **PLN2005-00509** |
| | Location: | **324 The Strand, Moss Beach** |
| | Assessor's Parcel No.: | **037-135-200** |

Consideration of a Coastal Development Permit (CDP) and Coastside Design Review Permit, pursuant to Sections 6328 and 6565, respectively, of the San Mateo County Zoning Regulations, to construct a 3,159 sq. ft. addition to an existing 1,332 sq. ft. residence and detached accessory building on an 11,103 sq. ft. parcel, including the removal of one significant size Cypress tree, located at 324 The Strand, in the unincorporated Moss Beach area of San Mateo County. This project is appealable to the California Coastal Commission. (Appeal from decision of the Zoning Hearing Officer to approve this permit). Application filed October 26, 2005. PROJECT PLANNER: Michael Schaller. Telephone: 650/363-1849.

10:30 a.m.

| | | |
|---|---|---|
| 7. | Owner: | **Curtis Brooks** |
| | Applicant: | **Sprint Spectrum** |
| | Appellant: | **Palomar Property Owners (Richard Landi, President)** |
| | File No.: | **PLN2000-00497** |
| | Location: | **1175 Palomar Drive, Palomar Park** |
| | Assessor's Parcel No.: | **051-416-040** |

Consideration of findings for the denial of a Use Permit renewal, pursuant to Section 6500 of the County Zoning Regulations, such that the application for the continued operation of a cellular communications facility consisting of two 13-foot-tall monopoles and equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County would be denied. Application filed February 23, 2006. PROJECT PLANNER: Michael Schaller. Telephone: 650/363-1849

Published in the Half Moon Bay Review
May 16, 2007                                    No. 6714



County of San Mateo

# Planning & Building Department

455 County Center, 2nd Floor
Redwood City, California 94063
650/363-4161   Fax: 650/363-4849

Mail Drop PLN122

plngbldg@co.sanmateo.ca.us

www.co.sanmateo.ca.us/planning

Please reply to:    **Michael Schaller**
(650) 363-1849

May 14, 2007

Rich Landi
419 Palomar Drive
Palomar Park, CA 94062

**PROJECT FILE**

Dear Mr. Landi

> **Subject:**    **File Number PLN2000-00497**
> Location:    1175 Palomar Drive
> APN:    051-416-040

On May 9, 2007, the San Mateo County Planning Commission considered your appeal of a Use Permit renewal, pursuant to Section 6500 of the County Zoning Regulations, to allow the continued operation of a cellular communications facility (File Number PLN 2000-00497, permit holder: Sprint Spectrum L.P.) located in the rear yard of the residential property at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County.

Based on information provided by staff and evidence presented at the hearing, the Planning Commission continued this item to the Planning Commission meeting of May 23, 2007. The Commission directed Staff to prepare findings for permit revocation to be heard and considered at that hearing.

If you have questions regarding this matter, please contact the Project Planner listed above.

Sincerely,

Rosario Fernandez
Planning Commission Secretary
Pcd0509R_6rf_sprint.doc

cc:    Building Inspection
Assessor
Leon Glahn
Sally Einspahr
Joann Landi
Tom Rice
Alicia Torre
Monroe Cochran
Curtis Brooks

**AR 0387**

**Palomar Property Owners**
419 Palomar Drive
Palomar Park, CA  94062


Commissioner David Bomberger
Commissioner Gail Slocum
Commissioner William Wong
Commissioner Steve Dworetzky
Commissioner Jon Silver
San Mateo County Planning Commission
455 County Center, 2nd Floor
Redwood City, CA 94063

HAND DELIVERED AT THE COMMISSION MEETING 5/9/07


RE:    File No. PLN2000-00497, Applicant Sprint Spectrum at 1175 Palomar Drive

Dear Sir and Madam,

The Palomar Property Owners association opposes the renewal of the Conditional Use Permit for Sprint's cellular communications facility at 1175 Palomar Park for all of the reasons stated in our letter of January 31, 2007 which is part of the staff report for this project.  In these remarks we will focus on four major points:  (1) land use incompatibility, (2) the negative impact to property, (3) the lack of necessity for this facility site and (4) applicant's irresponsibility.

(1) <u>Land use incompatibility:</u>

The Palomar Property Owners think that a multiple antenna communications facility is a money-making industrial use which is not compatible with a single family residential neighborhood.  Unlike gas and electrical rights-of-way, homeowners are paid substantial sums for allowing cellular sites on their land.  A number of installations on one site may generate $30,000 to $100,000 per year for what is at heart an industrial use, not an incidental utility right-of-way.

The General Plan is intended to protect single family residential areas from adjacent incompatible land uses.  (8.14)  Although the General Plan does not speak specifically about cellular facilities, it does state that the urban area design concept should "ensure that new development in urban areas is designed and constructed to contribute to the orderly and harmonious development of the locality" (4.35b); that land use designations should be distributed "in order to achieve orderly, understandable, coherent, and workable land use patterns" (7.7); and that land use compatibility should "protect and enhance the character of existing single-family areas" and "protect existing single-family

**AR  0388**

areas from adjacent incompatible land use designations which would degrade the environmental quality and economic stability of the area." (8.14) Allowing multiple cellular facilities on a single family residential property is inconsistent with these provisions. The staff's response to these points (page 6, #9) avoids addressing the industrial nature of the proposed use and its difference from linear facilities; instead staff concentrates on whether the cellular facility is screened and not disruptive. The staff discussion does not address the main point.

It may be of interest to the Commissioners to consider how other jurisdictions look at this issue. The City of San Carlos only allows a single antenna in residential zones (San Carlos Municipal Code Chapter 18.118). According to the Community Development Director in Belmont cellular facilities are only allowed in residential areas on public land such as on a water tank on public land. (City of Belmont Zoning Ordinance, Section 27.7.2.2.B) Wireless communication facilities are not permitted on residential property unless a variance is granted, a high standard. The City of Woodside has established a policy specifically for cellular facilities which favors town-owned property for cellular installations and only allows such facilities on residential property where the carrier demonstrates it has investigated all alternative sites and found them technologically not feasible. (Woodside Code section 153.400 to 153.999 on Wireless Communication Facilities)

(2) <u>Injury to property:</u>

Although this application is for a renewal of a Conditional Use permit, the very same findings must be made as for an original CUP. The staff report does not provide adequate support for the required findings. The first finding requires "That the establishment, maintenance and/or conducting of the proposed use will not, under the circumstances of the particular case, be detrimental to the public welfare or injurious to property or improvements in said neighborhood." However, two property owners have provided testimony that their property value was injured by the existence of the cellular site. Sally Einspahr of 1165 Palomar Drive stated on the record that "we lost the sale of our home to a doctor in June of 2005 when he discovered the antenna that sits on the property line". Alicia Torre of 1354 Pebble Drive stated that "her realtor informed her that the previous owners lost a sale to a couple who rescinded their written offer because of their concerns about the cellular installations." Although staff acknowledges this testimony, staff ignores it on the basis that "no actual data has been submitted to substantiate this claim." (p. 5)

It is our understanding that the Commissioners have received a letter from Sandy and Steve DeRodeff substantiating the claim made regarding 1354 Pebble Drive. As the DeRodeffs no longer live in the Bay Area, they are not an interested party in this proceeding. In addition, we believe another letter from an expert realtor will be provided by another speaker which will also address this rescinded transaction. The Planning Commission should not follow the staff's lead in ignoring evidence that hurts its position. In light of this evidence, the Commissioners cannot legitimately make the required finding.

*[handwritten marginal note: Not an industrial use. Allowed in all zoning districts]*

**AR 0389**

2

(3) <u>Lack of necessity for this site</u>

The second required finding is "That the approval of this wireless telecommunications facility is <u>necessary</u> for the public health, safety, convenience, or welfare." (my emphasis) The staff argument for this finding both in the recommended findings (p. 14) and in response to our letter (p. 5-6) is particularly weak. It fails to show that approval of this telecommunications facility is necessary for public safety, which is needed for the Commission to make this finding.

Basically the staff states that the FCC has established the need for wireless communications facilities and that "the wireless network is considered necessary for public health, safety, convenience and welfare" (p. 13). I don't think that the County has made any such statement regarding the wireless network in its general plan or zoning regulations. But even if the need for wireless communications were conceded, that alone would not support the required finding. Despite the staff's assertion, there is not <u>one</u> wireless network but many competing with each other and with wire-dependent telephone networks (Sprint, Cingular/AT&T, T-mobile, etc.). There is already an existing T-mobile facility at this location, so a communications network has already been established. The fact that another cellular facility at the same location would enhance a second network does not prove necessity, merely desirability to the second network provider and its customers.

There is a policy issue here that goes beyond this application: If the County deems cellular service necessary, does it also think that more than one cellular service in an area is necessary? If the county believes total coverage by all providers is necessary, is it prepared to permit multiple competing company installations throughout residential areas as the cellular companies desire? How much is enough – where does this logic stop?

More importantly, the staff misstates the record and fails to show that this particular site is necessary for public safety. The staff report states that "the information presented by the applicant indicates that without this particular site, Sprint's network has a significant hole in this area, which is due to the surrounding topography." (p 5) This is <u>not</u> correct. The applicant provided a colored map showing different levels of coverage with and without this site. (Incidentally, the "holes" lie mainly in residential areas not along the major transportation corridors such as Edgewood Road). The applicant did <u>not</u> provide any information about alternative sites and combinations of sites and what their coverage result would be. There is no evidence in the record comparing this site to others.

No information has been presented by either Sprint or the staff that this site alone is necessary to fill holes in Sprint's network. The staff speculates that other sites in nearby open space areas such as Edgewood County Park or Pulgas Ridge Open Space Preserve "could require extensive grading and vegetation removal and may not work anyway" (p 6); these are speculations not based on any serious consideration of alternative sites and analysis by impartial experts. In addition, there is nothing in the language of the finding that says that a site can be considered "necessary" because it has less environmental impact than other sites, or is cheaper than two other sites. The finding requires the

**AR 0390**

3

Commission to find that the approval of this cellular telecommunications facility is necessary for the public health, safety, convenience or welfare, and there is simply no record to justify such a finding.

### (4) Irresponsibility of Applicant

Sprint Spectrum has acted with blatant disregard for the conditions of its original permit, county procedures, and property rights, and does not deserve to be rewarded for its misbehavior with a renewal of the long-expired CUP. Staff acknowledges in sections 3 and 4 that applicant built its antenna pole on the wrong property and has not moved it, and that the applicant only put in the landscaping required under its original permit because its hearing was continued until that was accomplished. In section 2 staff acknowledges that the facility has been operating without a permit for 18 months, and that applicant did not file for a renewal until 10 months after the time prescribed. Sprint has failed to move its pole on the Einspahr property even though it is aware of the trespass and is in possession of a March 2007 letter requesting removal within 30 days (long past).

This is not a responsible record and the county should punish the Applicant's disregard for the permit conditions by not renewing its use permit. Section 6505 of the Zoning Regulations allows revocation of use permits when the terms of the use permit are violated; non-renewal is an even milder act.

### Summary

In sum, we ask you to deny Applicant's request for a renewal of its conditional use permit for the Sprint Spectrum cellular facility. This industrial use is incompatible with the single family residential neighborhood, neither of the required findings can be made based upon the record and evidence presented today, and the applicant has acted without regard for county procedures, conditions of approval and property rights and does not deserve leniency.

Sincerely yours,

Richard G. Landi, President

Board of Directors
Jeff Garratt - Leon Glahn - Emile Kishek - Richard Landi - Carol Mondino
Daniel Petelin - Tom Rice - Trish Taylor - Bernie Wooster-Wong

There are numerous incidences of cell sites w/in
~~An ~~areas in the County. — Alameda de Padges for
residential
example.

Mary will speak to the issue of diminuation of prop. values.
There is a court case

So they need multiple sites on this prop.

Emergency can occur in residential areas as well
not just on Hwy. 280

Einspahr — wants a new cell site ord. — moratorium
until such ord. has been adopted.
 — Sprint should not be renewed — they are irresponsible.
 — Mary should talk about "punishing" Sprint —
 — ~~Staff~~ In 2000, Staff didn't know of future applications on
this parcel.

Joanne Landi — What other jurisdictions allow is not applicable

~~Mary~~   No public presentation of Sprints coverage study.
   No analysis of alternative sites was presented

In a ~~renewal~~ the burden to revoke the permit falls on the
County to prove their has been injury.

**AR 0392**

# ATTACHMENT B

## PALOMAR PROPERTY OWNERS
419 Palomar Drive
Palomar Park, CA  94062

January 31, 2007

Planning Commission
County of San Mateo
455 County Center
Redwood City, CA  94063

Subject:    Appeal of Use Permit Renewal
PLN 2000-00497
1175 Palomar Drive, APN 051-416-040

Honorable Commissioners:

Palomar Property Owners (PPO) wishes to appeal the decision made by the Zoning Hearing Officer in the above referenced hearing.   We request that the decision be reversed and the application for renewal be denied.

1.      We are not convinced that the findings of the Zoning Hearing Officer established the legality of the  original cellular facility upon which all of the subsequent operating permits were based as "existing facilities". The earliest reference to the existing facility is in the November 2, 2000 hearing which states that on May 22, 1997 Use permit approved by the Zoning Hearing Officer for the "existing Pacific Bell Cellular facility." How did the Pacific Bell Cellular facility get there?  If the Hearing Officer cannot produce any evidence of an original permit or zoning approval, the existing antenna installation at 1175 Palomar Drive constitutes an illegal zoning nonconformity.  The explicit purpose of Zoning Regulation Section 6130 is to phase out these non conformities.

2.      The subject request should be for a "Use Permit" instead of  "Renewal" as the present system is operating without a valid Use Permit.  On November 2, 2000, a Use Permit was issued valid for a five year period expiring on November 2, 2005.  The Use Permit contained the additional stipulation that "The applicant shall file for a renewal of this permit six months prior to the expiration date with the County Planning and

**AR  0393**

Building Division if continuation of this use is desired." The renewal application was submitted on February 23, 2006, almost ten months beyond the specified time for renewal and four months after the expiration of the Use Permit. The application for renewal is invalid.

3.    The Use Permit, expiring on November 2, 2005, should not have been finalized or should have been revoked earlier.

a. Site conditions as required by the Use Permit issued in year 2000 have never been met. One of the two antennae poles is located approximately 4 feet from the approved plan location, violating setback requirements as well as the approved plan and is physically located on a neighbors' property.

b.    The landscape plan approved as part of the cell sites building permit on May 14, 2004 was never implemented during the time period of the Use Permit.

4.    Under the intent of the provisions of Section 6500 (Use Permits) which are being used to govern the installation of wireless communication systems in areas zoned 1/S-101DR, permits must not be issued without due consideration of the existing zoning requirements and the necessity of using this particular site. Neither of the two findings required for the Use Permit can be made.

a. The first finding requires "That the establishment, maintenance and/or conducting of the proposed use will not, under the circumstances of the case be detrimental to the public welfare or injurious to property or improvements in said neighborhood."

1).    Regardless of the actual level of the Radio Frequency emissions and the assurance of the operators of such systems that there is no problem, the neighbors in the area and general public are concerned about the effect on them and their children and if at all possible remove themselves from the area. Property values do decline and people are inconvenienced.

2).    Property values also decline due to the presence of antennas and enclosures in their neighborhoods as evidence of the requirements for special landscaping, shapes and colors to prevent the neighbors and general public from seeing the equipment. It was reported by staff that no comments concerning this site were received from the public during the Use Permit period but as noted earlier the requr9ement for landscaping was imposed in 2004 in response to public protest.

3).    Related to this site, two contiguous landowners have both

**AR 0394**

018

presented evidence of property sales that were not consummated due to prospective buyers' concerns about the wireless facilities. This is evidence of direct injury to property owners, but this evidence has so far been completely ignored in the staff reports and the proposed findings.

      b.      The second finding requires "That the approval of this wireless telecommunications facility is necessary for the public health, safety, convenience, or welfare."

      1.      No evidence has been presented proving that this particular site is necessary for the public health, safety, convenience or welfare of the public. The staff report only asserts that it would result in an "enhanced network" which is a "benefit." This site is not unique in its ability to provide the desired wireless service to this area. Sites are available that are not within the area zoned R-1/S-101DR and it is not evident that the applicant has been required to carry out this investigation. Residential areas should not be violated in order to provide enhanced operation to commercial entities.

5.      In support, the General Plan although it does not speak specifically about cellular facilities, it does state that the urban area design concept should "ensure that new development in urban areas is designed and constructed to contribute to the orderly and harmonious development of the locality" (4.35b); that land use designations should be distributed "in order to achieve orderly, understandable, coherent, and workable land use patterns" (7.7); and that land use compatibility should "protect and enhance the character of existing single-family areas" and "protect existing single-family areas from adjacent incompatible land use designations which would degrade the environmental quality and economic stability of the area." (8.14) These facilities under consideration, are moneymaking ventures for the property owners who earn annual fees for allowing this use of their property, unlike electrical, telephone and gas lines.

6.      Additional questions subject to discussion:

      a.      Does the Building Site Coverage Area Ratio adhere to the requirements in Section 6300.10.50?

      b.      Does the Building Floor Area adhere to the requirements of Section 6300.10.60?

      c.      There are indications that there are building permit violations on the property. Section 6105.1 stipulates that no permit may be issued for any property that has existing building or zoning violations. As such, the permits must be withheld.

7.    There can be found no evidence that this facility was reviewed by the Design Review Committee which is required prior to issuing a building permit.

8.    Concern also exists that the Use Permit for these facilities in year 2000 was originally permitted relying in part on a misleading document from Palomar Property Owners (PPO). Following questions from the audience at an earlier meeting concerning approval by PPO of the Use Permit in year 2000, the Zoning Hearing Officer stated on the record January 4, 2007, that the County had received a letter which said PPO did not oppose the cellular installation. He also now acknowledged that this letter was signed by the site owner who was, at the time, President of PPO. PPO has diligently searched its records and there is no record of notification to PPO of the planned Use Permits by either the County or the site owner/President nor is there any record of support or opposition being discussed at any board meeting. In searching PPO records, it was also discovered that PPO's mailing address had been diverted to the site owners/Presidents' home thereby preventing any notification from the County reaching any other Board member. The mailing address has been corrected and mail is now being directed to PPO's legal mailing address.

The information provided above clearly demonstrates the absence of sufficient legal grounds for the granting of a Use Permit and/or renewal of the Use Permit. In the absence of the proper foundation for the granting of a Use Permit, it is the recommendation of the Board of Directors of Palomar Property Owners that the application for renewal be denied.

Sincerely,

Richard G. Landi, President

**Board of Directors**
Jeff Garratt  •  Leon Glahn  •  Emile Kishek  •  Richard Landi  •  Carol Mondino
Daniel Petelin  •  Tom Rice  •  Trish Taylor  •  Bernie Wooster-Wong

cc:    Supervisor Richard Gordon
       Supervisor Jerry Hill

**AR 0396**



**VICINITY MAP**

**San Mateo County Planning Commission Meeting**

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**

ATTACHMENT C

PROJECT PARCEL

AR 0397



# Landscape Site Plan

ATTACHMENT D

## San Mateo County Planning Commission Meeting

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**

AR 0398



LARGE TREE PLANTING    N.T.S.    1

LEGEND    N.T.S.    2

TRENCHES    N.T.S.    3

EMITTERS    N.T.S.    4

## San Mateo County Planning Commission Meeting

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**

Attachment:

AR 0399



**Southwest Elevation**

**Northwest Elevation**

**San Mateo County Planning Commission Meeting**

Owner/Applicant: **Sprint**

File Numbers:    **PLN 2000-00497**

Attachment:

**AR 0400**



**Northeast Elevation**

**Southeast Elevation**

San Mateo County Planning Commission Meeting

Owner/Applicant: **Sprint**

File Numbers:    **PLN 2000-00497**

Attachment:

AR 0401



# Enlarged Site Plan

Attachment:

## San Mateo County Planning Commission Meeting

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**





AR 0404



NORTHEAST ELEVATION

SOUTHEAST ELEVATION

**San Mateo County Planning Commission Meeting**

Applicant:

File Numbers:

Attachment:

AR 0405

cmxfrm1fbos.cmx

dlri2000-00497.cdr 10/12/00 ss

ATTACHMENT E

**COUNTY OF SAN MATEO**
**ENVIRONMENTAL SERVICES AGENCY** PROJECT FILE
**PLANNING AND BUILDING DIVISION**

**DATE**: December 7, 2006

**TO**:         Zoning Hearing Officer

**FROM**:         Jennifer Cutler, Contract Planner, MHA Environmental Consulting, Inc.

**SUBJECT**:    Consideration of a Use Permit renewal, pursuant to Section 6500 of the County
Zoning Regulations, to allow the continued operation of a cellular communica-
tions facility consisting of two 13-foot-tall monopoles and one equipment
enclosure measuring 18 feet by 15 feet located in the rear yard of the residential
property located at 1175 Palomar Drive in the unincorporated Palomar Park area
of San Mateo County.

County File Number:  PLN 2000-00497 (Sprint/Nextel)

**PROPOSAL**

The applicant is proposing to renew their use permit for an existing wireless communications
facility in the rear yard of an existing single-family home at 1175 Palomar Drive.  The system
consists of two monopoles and one equipment cabinet enclosure.  The cellular antennas are
attached to the 13-foot tall monopoles located on the southeast and northwest sides of the parcel.
The equipment cabinet is located in the rear portion of the yard, adjacent to an existing T-Mobile
cellular facility.  The total area of the cabinet enclosure is 270 square feet, and is surrounded by a
6-foot high metal fence with green plastic slats.

**RECOMMENDATION**

Approve the use permit renewal, County File No. PLN 2000-00497, by making the required
findings and adopting the conditions of approval in Attachment A.

**BACKGROUND**

Report Prepared By:  Jennifer Cutler, Contract Planner, MHA Environmental Consulting, Inc.,
Telephone 650/373-1200

Report Reviewed By:  Mike Schaller, Senior Planner; Telephone 650/363-1849

Applicant:  Sprint Spectrum L.P.

**AR 0406**    000

Owner: Curtis Brooks

Location: 1175 Palomar Drive

APN: 051-416-040

Size: 22,858 sq. ft.

Existing Zoning: R-1/S-101 (Single-Family Residential/Palomar Park)

General Plan Designation: Low Density Residential (0.3 – 2.3 dwelling units per net acre)

Existing Land Use: Single-family home and other wireless communications facilities

Flood Zone: Zone C (Area of Minimal Flooding); Community Panel No. 060311-0250B, Effective Date: July 5, 1984

Environmental Evaluation: Categorically exempt pursuant to Section 15301, Class 1 (Continued Operations of an Existing Utility).

Setting: The project site is located on the west side of the street and is accessible from Palomar Drive. The site is improved with a one-story, single-family home and an existing T-Mobile cellular facility. The surrounding uses are single-family homes. The site is visible from Edgewood Road at Crestview but the antennae and equipment compounds are masked by existing Monterey pine and similar trees located behind the existing facilities.

Proposed Development in the Vicinity:

1.  Verizon is proposing to co-locate three (3) antennas and associated equipment cabinets in the rear yard of 1175 Palomar Drive adjacent to the existing Sprint facilities. The proposed facility consists of installing a total of three (3) steel poles and flush-mounting one (1) duel band antenna to each pole. Two (2) poles would be 17 feet in height. The third pole would be 25 feet in height. The third pole would replace an existing pole owned by Sprint that is currently located several feet outside of the east side property line of the project site. The new third pole would be located so that it is in compliance with the County's regulations, and would support antennas for both Sprint and Verizon. The associated equipment cabinets would be located near the existing equipment compounds of the other existing carriers on the site in a lease area measuring 15.5 feet by 15.17 feet.

2.  MetroPCS is proposing to co-locate three (3) antennas and associated equipment cabinets in the rear yard of 1175 Palomar Drive adjacent to the existing Sprint facilities. The proposed facility consists of installing an equipment pad surrounded by a six-foot high fence and a total of three (3) ground-mounted antennae. The antennae would be centered at 13 feet above ground level on two poles, with a maximum height of 15 feet.

**AR 0407**

031

**DISCUSSION**

A.    COMPLIANCE WITH CONDITIONS OF THE LAST APPROVAL

The conditions from the approval of the use permit in 2000 are assessed below with regard to compliance, and whether the conditions should either be retained or revised.  Staff recommends that some conditions, as indicated, be removed in instances where the condition: (1) has been complied with, and/or (2) is no longer deemed feasible or necessary.

Planning Division

1.    *This approval applies only to the proposal as described in this report and plans and documents submitted to the Planning Division on July 14, 2000.  Minor adjustments to the project in the course of applying for building permits may be approved by the Planning Director if they are consistent with the intent of and in substantial conformance with this approval.*

*Compliance with Condition?*  No.  One of the two antennae poles is located approximately 4 feet from the planned location and is outside the property line and the applicant has not implemented the landscape plan approved as part of this cell site's building permit on May 14, 2004 (Attachment E).

*Recommend to Retain Condition?*  Yes.  The incorrectly located antennae will be relocated such that the project is in compliance.  Verizon has proposed to relocate Sprint's existing antennae to Verizon's new pole within the property line and remove Sprint's non-compliant pole, pending approval of their project (PLN 2005-00306).  In addition, staff is recommending a condition of approval on the Verizon application which requires implementation of the previously approved landscape plan, prior to final approval of Verizon's building permit.

2.    *The applicant shall obtain a building permit and develop in accordance with the approved plans.*

*Compliance with Condition?*  Yes.  A building permit was issued and finalized for the cell facility.

*Recommend to Retain Condition?*  No.  The facilities have already been constructed, and this condition is no longer necessary.

3.    *This Use Permit shall be valid for a five-year period and shall expire on November 2, 2005.  The applicant shall file for a renewal of this permit six months prior to the expiration with the County Planning and Building Division, if continuation of this use is desired.*

**AR 0408**

032

*Compliance with Condition?*  No. The renewal application was only submitted on February 23, 2006, after a third and final renewal notice was sent extending the deadline to February 27, 2006.

*Recommend to Retain Condition?*  Yes, but modified to:

> This Use Permit shall be valid for a five-year period and shall expire on December 7, 2011.  The applicant shall file for a renewal of this permit six months prior to the expiration with the County Planning and Building Division, if continuation of this use is desired.  Any modifications to this facility will require a use permit amendment.  If an amendment is requested, the applicant shall submit the necessary documents and fees for consideration at a public hearing.

4.   *The monopoles, antennas, and fencing shall be painted the same "enviro-green" color as the existing Pacific Bell equipment cabinet.  A color sample shall be submitted to the Planning Counter prior to building permit issuance.  The applicant shall include file/case number with all color samples.  Color verification by a building inspector shall occur in the field after the applicant has painted the equipment an approved color, but before the applicant schedules a final inspection.*

*Compliance with Condition?*  Yes. The monopoles are the same color as the existing T-Mobile (previously Pacific Bell) enclosure but both seem to have faded.

*Recommend to Retain Condition?*  Yes, but modified to:  *The monopoles and antennas shall be repainted in the originally approved and painted color, "enviro-green."  Metal fencing with green plastic slats shall be maintained in good condition. Any proposed change to the color shall be reviewed and approved by the Planning Division prior to painting.  Any new color proposed shall blend with the character of the site and the vegetation in the vicinity.*

5.   *Construction hours shall be Monday through Friday 7:00 a.m. to 6:00 p.m., Saturday 9:00 a.m. to 5:00 p.m., and no construction will be allowed on Sundays or national holidays.*

*Compliance with Condition?*  Yes.

*Recommend to Retain Condition?*  No.  The facilities have already been constructed, and this condition is no longer necessary.

6.   *Noise levels produced by the proposed construction activity shall not exceed 80-dBA level at any one moment.*

*Compliance with Condition?*  Yes.

AR 0409

033

*Recommend to Retain Condition?* No.  The facilities have already been constructed, and this condition is no longer necessary.

7.   *The installation shall be removed in its entirety at that time when this technology becomes obsolete or this facility is no longer needed.*

*Compliance with Condition?* Yes.  The installation has not been removed since technology is not yet obsolete and the facility is still needed.

*Recommend to Retain Condition?* Yes.

8.   *The applicant shall submit an erosion control plan which implements best management practices to prevent erosion and sedimentation during the entire construction process prior to building permit issuance.  The plan shall include, but is not limited to (1) installation of silt blankets and fiber rolls below all areas of earth clearing, (2) covering of surcharges for protection from rain and wind erosion, and (3) replanting all disturbed areas immediately upon completion of construction with indigenous vegetation.*

*Compliance with Condition?* Yes.  This was confirmed as having been met when the initial building permit for the facility was finalized.

*Recommend to Retain Condition?* No.  The facilities have already been constructed, and this condition is no longer necessary.

9.   *During project construction, the applicant shall, pursuant to Section 5022 of the San Mateo County Ordinance Code, minimize the transport and discharge of storm water runoff from the construction site into storm drain systems and water bodies by:*

a.   *Disposing of removed soil in a County approved landfill, or by spreading the soil in the immediate vicinity employing the above erosion control techniques at a depth not to exceed 6 inches in height.*

b.   *Stabilizing all denuded areas and maintaining erosion control measures continuously between October 15 and April 15.*

c.   *Removing spoils promptly and avoiding stockpiling of fill materials, when rain is forecast.  If rain threatens, stockpiled soils and other materials shall be covered with a tarp or other waterproof material.*

d.   *Storing, handling, and disposing of construction materials and wastes so as to avoid their entry to the storm drain system or water body.*

e.   *Avoid cleaning, fueling or maintaining vehicles on-site, except in an area designated to contain and treat runoff.*

**AR 0410**    034

     *f.*    *The applicant shall revegetate construction areas with native plant materials (trees, shrubs, and/or ground cover) which are compatible with the surrounding vegetation and are suitable to the climate, soil, and ecological characteristics of the area.*

*Compliance with Condition?* Yes. This was confirmed as having been met when the initial building permit was finalized.

*Recommend to Retain Condition?* No. The facilities have already been constructed, and this condition is no longer necessary.

California Department of Forestry

10.   *Maintain around and adjacent to such buildings or structures a fuel-break/fire break made by removing and cleaning away flammable vegetation for a minimum distance of 30 feet. Remove that dead or dying portion of any tree which extends over the any structure.*

    *Compliance with Condition?* Yes.

    *Recommend to Retain Condition?* Yes.

11.   *All buildings and structures must have an address posted in such a location and in such a manner that it can be easily seen while traveling in both directions on the main road day or night. Numerals shall be contrasting in color to their background and shall be no less than 4 inches in height, and have a minimum stroke of 3/4-inch.*

    *Compliance with Condition?* Yes.

    *Recommend to Retain Condition?* Yes.

12.   *All proposed enclosed structures on the site shall be equipped with an approved FM 200 fire protection system or equivalent. Plans and calculations must be submitted to the San Mateo County Building Inspection Section for review and approval by the County Fire Department.*

    *Compliance with Condition?* Yes.

    *Recommend to Retain Condition?* Yes, but modified to:

        All proposed enclosed structures on the site shall be equipped with an approved FM 200 fire protection system or equivalent which shall be maintained for the duration of the use permit.

**AR 0411**

035

13.  *Access must be provided from the street to the access gate at the proposed site. The access must be provided in such a manner that emergency crews can get emergency medical equipment and fire fighting equipment to the scene.*

*Compliance with Condition?*  Yes. This condition was met at the time of initial building permit for the facility was finalized and was confirmed by a site visit on September 22, 2006.

*Recommend to Retain Condition?*  Yes.

14.  *The proposed wood fencing is not desirable in this area because of the fire hazard. A metal fence with slats would be more desirable solution to protect the facility.*

*Compliance with Condition?*  Yes. This was confirmed as having been met when the initial building permit for the facility was finalized and was confirmed by a site visit on September 22, 2006.

*Recommend to Retain Condition?*  No. The facilities have already been constructed, and this condition is no longer necessary.

15.  *A Knox Box is required at the entry gate to allow emergency personnel access to the site in case of an emergency. Contact the County Fire Department at 650/573-3846 for details.*

*Compliance with Condition?*  Yes. No entry gate prevents entrance to the property. The site is open and accessible at all times.

*Recommend to Retain Condition?*  Yes, but modify to:

> The project site shall remain accessible at all times. If an entry gate is installed then a Knox Box is required at the entry gate to allow emergency personnel access to the site in case of an emergency. Contact the County Fire Department at 650/573-3846 for details.

16.  *A final inspection will be required before the site can be put into use. All project conditions which result in the issuance of a Building Permit will be required to be completed at that time.*

*Compliance with Condition?*  Yes. This was confirmed as having been met when the initial building permit for the facility was finalized.

*Recommend to Retain Condition?*  No. The facilities have already been constructed, and this condition is no longer necessary.

**AR 0412**

056

17.  *A more in-depth plan review will be conducted at the time a Building Permit is applied for. This has been a preliminary review and additional conditions may be placed on the project at the building permit application stage.*

*Compliance with Condition?*  Yes.  This was confirmed as having been met when the initial building permit for the facility was finalized.

*Recommend to Retain Condition?*  No.  The facilities have already been constructed, and this condition is no longer necessary.

B.  CONFORMANCE WITH USE PERMIT FINDINGS

In order to continue the operation of this facility, the following use permit findings are necessary:

1.  **Find that the establishment, maintenance and/or conducting of the use will not, under the circumstances of the particular case, be detrimental to the public welfare or injurious to property or improvements in said neighborhood.**

The impacts from the continued operation of this facility, subject to the recommended conditions of approval, would be minimal.  County staff has received no complaints regarding interference with household appliances or communications equipment resulting from the antennas.

Recent radio frequency (RF) reports submitted by Verizon and MetroPCS as part of their proposals for facilities on the site analyze the cumulative RF emissions for all existing and proposed facilities at the property.  The updated RF measurements showed that current RF levels are at 13% of the applicable public exposure limits.

Because the facility is unmanned and only requires periodic service visits, continued operation of the facility should not generate additional traffic, noise, or intensity of use of the property.

2.  **Find that the use is necessary for the public health, safety, convenience, or welfare.**

The use is for telecommunication services.  The FCC has established the desirability and need for wireless communications facilities to enable communication between mobile units and the existing wire-dependent telephone system.  This facility contributes to an enhanced wireless network for increased clarity, range, and system capacity, and therefore, is a benefit to both public and private users.  The wireless network is considered necessary for public health, safety, convenience, and welfare.  Staff believes no adverse effects to public health and safety would result from the continued operation of this facility.

**AR 0413**

057

C.    ENVIRONMENTAL REVIEW

The proposed renewal is categorically exempt from the California Environmental Quality Act (CEQA) under Section 15301 (Class 1), Subsection (b):  existing facilities of both investor and publicly owned utilities used to provide electric power, natural gas, sewerage, or other public utility services.

**ATTACHMENTS**

A.    Recommended Findings and Conditions of Approval
B.    Location and Vicinity Map
C.    Site Plan
D.    Elevations
E.    Landscape Plans

MHA/MJS:cdn – MHAQ1433_WCU.DOC

**AR 0414**    058

Attachment A

County of San Mateo
Environmental Services Agency
Planning and Building Division

**RECOMMENDED FINDINGS AND CONDITIONS OF APPROVAL**

Permit or Project File Number:  PLN 2000-00497          Hearing Date:  December 7, 2006

Prepared By: Jennifer Cutler, Contract Planner      For Adoption By:  Zoning Hearing Officer
                    MHA Environmental Consulting, Inc.

## RECOMMENDED FINDINGS

For the Environmental Review, Find:

1.    That the proposed renewal is categorically exempt from the California Environmental
      Quality Act (CEQA) under Section 15301 (Class 1), Subsection (b):  existing facilities
      of both investor and publicly owned utilities used to provide electric power, natural gas,
      sewerage, or other public utility services.

For the Use Permit, Find:

2.    That the establishment, maintenance and/or conducting of the proposed use will not, under
      the circumstances of the particular case, be detrimental to the public welfare or injurious to
      property or improvements in said neighborhood.  Since this cellular facility was completed
      in 2001, staff has not received any complaints regarding its operation or maintenance
      activities associated with it.

3.    That the approval of this wireless telecommunications facility is necessary for the public
      health, safety, convenience or welfare.  This facility contributes to an enhanced wireless
      network for increased clarity, range, and system capacity, and therefore, is a benefit to both
      public and private users.

## RECOMMENDED CONDITIONS OF APPROVAL

Planning Division

1.    This approval applies only to the proposal as described in this report and plans and
      documents submitted to the Planning Division on July 14, 2000, and will require the
      relocation of the monopole and antennae located just south of the property line to either
      the proposed Verizon monopole, pending approval, or a new monopole located where
      indicated on the original plans (Attachment C).  Minor adjustments to the project in the

- 10 -

**AR 0415**

course of applying for building permits may be approved by the Community Development Director if they are consistent with the intent of and in substantial conformance with this approval.

2.  This Use Permit shall be valid for a five-year period and shall expire on December 7, 2011. The applicant shall file for a renewal of this permit six months prior to the expiration with the County Planning and Building Division, if continuation of this use is desired. Any modifications to this facility will require a use permit amendment. If an amendment is requested, the applicant shall submit the necessary documents and fees for consideration at a public hearing.

3.  The monopoles and antennas shall be repainted and maintained in the originally approved color: "enviro-green." Metal fencing with green plastic slats shall be maintained in good condition. Any proposed change to the color shall be reviewed and approved by the Planning Division prior to painting. Any new color proposed shall blend with the character of the site and the vegetation in the vicinity.

4.  The installation shall be removed in its entirety at that time when this technology becomes obsolete or this facility is no longer needed.

5.  The landscape and irrigation plan dated April 20, 2004 and received by the County on April 29, 2004 (Attachment E), shall be installed and verified by Planning staff within three months of the renewal of this use permit. In addition, there will be administrative reviews one year and three years after the December 7, 2006 approval for compliance with this condition. Failure at the time of any administrative reviews of this condition will require a public hearing with the Zoning Hearing Officer at the County's earliest opportunity. The applicant shall maintain the landscaping for the duration that their facilities are located on the site and replace any dead plant material immediately.

California Department of Forestry

6.  Maintain around and adjacent to such buildings or structures a fuel-break/fire break made by removing and cleaning away flammable vegetation for a minimum distance of 30 feet. Remove that dead or dying portion of any tree that extends over the any structure.

7.  All buildings and structures must have an address posted in such a location and in such a manner that it can be easily seen while traveling in both directions on the main road day or night. Numerals shall be contrasting in color to their background and shall be no less than 4-inches in height, and have a minimum stroke of 3/4-inch.

8.  All proposed enclosed structures on the site shall be equipped with an approved FM 200 fire protection system or equivalent which shall be maintained for the duration of the use permit.

- 11 -

AR 0416    040

9.    Access must be provided from the street to the access gate at the proposed site. The access must be provided in such a manner that emergency crews can get emergency medical equipment and fire fighting equipment to the scene.

10.   The project site shall remain accessible at all times. If an entry gate is installed then a Knox Box is required at the entry gate to allow emergency personnel access to the site in case of an emergency. Contact the County Fire Department at 650/573-3846 for details.

11.   This approval applies only to the proposal, documents, and plans described in this report and submitted to and approved by the Zoning Hearing Officer on July 14, 2000, and to the documents and plans associated with the use permit renewal approved by the Zoning Hearing Officer on December 7, 2006.

Building Inspection Section

12.   The new monopole (either relocated per original plans or proposed by Verizon) will require a building permit prior to commencement of construction.

MHA/MJS:cdn – MHAQ1433_WCU.DOC

AR 0417                                    041



**Vicinity Map**

**San Mateo County Zoning Hearing Officer's Meeting**

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**

Attachment: **B**

**PROJECT PARCEL**

**AR 0418**



# Enlarged Site Plan

Attachment: C

San Mateo County Zoning Hearing Officer's Meeting

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**



**Southwest Elevation**

**Northwest Elevation**

**San Mateo County Zoning Hearing Officer's Meeting**

Owner/Applicant: **Sprint**

File Numbers:    **PLN 2000-00497**

Attachment:    D

**AR 0420**



**Northeast Elevation**

**Southeast Elevation**

**San Mateo County Zoning Hearing Officer's Meeting**

Owner/Applicant: **Sprint**

File Numbers:    **PLN 2000-00497**

Attachment:    D

**AR 0421**



# Landscape Site Plan

Attachment: E

# San Mateo County Zoning Hearing Officer's Meeting

Owner/Applicant: **Sprint**

File Numbers: **PLN 2000-00497**



LARGE TREE PLANTING    N.T.S.    1

TRENCHES    N.T.S.    3

LEGEND    N.T.S.    2

EMITTERS    N.T.S.    4

**AR 0423**

## San Mateo County Zoning Hearing Officer's Meeting

Owner/Applicant: **Sprint**                    Attachment: **E**

File Numbers: **PLN 2000-00497**

ATTACHMENT F

# COUNTY OF SAN MATEO
## PLANNING AND BUILDING DEPARTMENT

**DATE:** January 4, 2007

**TO:**          Zoning Hearing Officer

**FROM:**      Jennifer Cutler, Contract Planner, MHA Environmental Consulting, Inc.

**SUBJECT:**   *Staff Report Addendum*: *Response to request for additional information for Item No. 7* - Consideration of a Use Permit renewal, pursuant to Section 6500 of the County Zoning Regulations, to allow the continued operation of a cellular communications facility consisting of two 13-foot tall monopoles and one equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County.

County File Number: PLN 2000-00497 (Sprint/Nextel)

## PROPOSAL

The applicant is proposing to renew their use permit for an existing wireless communications facility in the rear yard of an existing single-family home at 1175 Palomar Drive. The system consists of two monopoles and one equipment cabinet enclosure. The cellular antennas are attached to the 13-foot tall monopoles located on the southeast and northwest sides of the parcel. The equipment cabinet is located in the rear portion of the yard, adjacent to an existing T-Mobile cellular facility. The total area of the cabinet enclosure is 270 sq. ft., and is surrounded by a 6-foot high metal fence with green plastic slats.

## RECOMMENDATION

Approve the use permit renewal, County File No. PLN 2000-00497, by making the required findings and adopting the conditions of approval in Attachment A.

## DISCUSSION

A.   PROCEEDINGS OF THE ZONING HEARING OFFICER MEETING HELD ON DECEMBER 7, 2006

On December 7, 2006, the Zoning Hearing Officer considered the project and requested a continuance to January 4, 2007, in order to allow time for the applicant to install the previously approved landscaping. The Zoning Hearing Officer also requested that staff further investigate the following items:

**AR 0424**

1.   *Verify the installation of the approved landscaping plan that was previously required.*

2.   *Revise the recommended conditions so that they stand alone and are not tied to or dependent upon any other proposal for this site.*

3.   *Reevaluate the visual impact and other neighborhood compatibility issues relevant to the existing operation and recommend any new or revised conditions as necessary.*

4.   *Identify the appropriate zoning setback requirement for the antenna pole to be relocated.*

5.   *Provide original approval letter and original staff report from the initial (2000) use permit approval.*

B.   <u>RESEARCH AND RESPONSE TO QUESTIONS RAISED BY THE ZONING HEARING OFFICER</u>

Staff has been able to further investigate the specific items listed by the Zoning Hearing Officer and staff's responses are as follows:

1.   *Verify the installation of the approved landscaping plan that was previously required.*

The landscape plan dated April 20, 2004, was implemented between December 23, 2006 and January 1, 2007 and verified by staff on January 2, 2007. This landscape plan was not part of the original use permit, but was proposed and approved subsequent to the original installment of the Sprint cellular facilities due to a request from the public for additional screening of the facilities.

The April 20, 2004 landscaping plan included the planting and irrigation for fifteen (15) trees, including ten (10) Dawn Redwood (metasequoia glyptos) and five (5) Post Oak (quercus stellata). Both of these tree species are deciduous, and therefore shed their leaves in the winter, and because of this, they are not available at this time of year. Therefore, Sprint proposed two substitutions: replace the Dawn Redwood with Redwood Soquel (sequoia semperviens) and replace Post Oak with Coast Live Oak (quercus virginiana). Both of these trees are evergreen. The replacement trees are of equivalent height and massing as those originally proposed, and the substitution was agreed to by staff on December 21, 2006. Staff visited the site and confirmed the installation of the proposed landscaping plan, including 15 trees and corresponding irrigation system, on January 2, 2007.

2.   *Revise the recommended conditions so that they stand alone and are not tied to or dependent upon any other proposal for this site.*

**AR 0425**

Conditions of Approval 1 and 12 have been revised to not include any reference to other proposed projects on the site. At the request of attendees of the December 7 meeting, staff also clarified the Department of Forestry's firebreak requirement, included as Condition of Approval 6. The requirement for the clearing of all flammable vegetation within 30 feet of any structure only includes flammable brush (i.e., manzanita), grass higher than 6 inches, dying vegetation, accumulated leaves and needles, and tree branches that rest on the ground. This requirement would not require the removal of any of the existing healthy trees or vegetation. This requirement is based on a recent State law effective January 2005.

3.    *Reevaluate the visual impact and other neighborhood compatibility issues relevant to the existing operation and recommend any new or revised conditions as necessary.*

The existing 13-foot pole located adjacent to the southeast property line is visually intrusive to the adjacent property owner due to its existing location one foot over the property line as well as the lack of screening. Staff recommends that one of two options be allowed to bring the location of the pole back into compliance and reduce the visual impact to the adjacent residential property.

(a)    If the existing 13-foot pole is relocated to the location shown in the original plans, i.e., 3 feet from the property line, additional landscaping would be recommended by staff to screen the antennas from view of the adjacent residential property. A minimum 3-foot setback is allowed for this pole as it is considered an accessory structure.

(b)    If the existing 13-foot pole is relocated, as discussed at the December 7, 2006, Zoning Hearing Officer's meeting, to a position that is 10 feet from the property line where an existing tree would screen it from view, staff would recommend no additional landscaping. A 10-foot setback provides the same buffer that would be required for the construction of a new residential structure on the property.

4.    *Identify the appropriate zoning setback requirement for the antenna pole to be relocated.*

The zoning setback requirement for primary residential structures in the R-1/S-101 zoning district is 10 feet for side yards, 20 feet for rear yards, and 20 feet for front yards. The cellular antennas and pole included in this project are considered by the County to be accessory structures and therefore could be located as close as 3 feet to the side and rear property lines. The proposal in 2000 included one 13-foot antenna located 3 feet from the southeast (left side) property line. The actual pole was instead located 4 feet from the proposed location, one foot onto the adjoining property.

5.    *Provide original approval letter and original staff report from the initial (2000) use permit approval.*

**AR 0426**

The original staff report and approval letter are included in the addendum staff report as Attachment C.

## ATTACHMENTS

A.  Revised Recommended Findings and Conditions of Approval
B.  Staff Report Dated December 7, 2006
C.  Staff Report and Approval Letter Dated November 2, 2000

MHA:MJS:fc – MHAR0030_WFU.DOC

**AR 0427**

051

Attachment A

County of San Mateo
Planning and Building Department

## RECOMMENDED FINDINGS AND CONDITIONS OF APPROVAL

Permit or Project File Number: PLN 2000-00497       Hearing Date: January 4, 2007

Prepared By: Jennifer Cutler, Contract Planner       For Adoption By: Zoning Hearing Officer
MHA Environmental Consulting, Inc.

## RECOMMENDED FINDINGS

For the Environmental Review, Find:

1.  That the proposed renewal is categorically exempt from the California Environmental
    Quality Act (CEQA) under Section 15301 (Class 1), Subsection (b): existing facilities of
    both investor and publicly owned utilities used to provide electric power, natural gas,
    sewerage, or other public utility services.

For the Use Permit, Find:

2.  That the establishment, maintenance and/or conducting of the proposed use will not, under
    the circumstances of the particular case, be detrimental to the public welfare or injurious to
    property or improvements in said neighborhood. Since this cellular facility was completed
    in 2001, staff has not received any complaints regarding its operation or maintenance
    activities associated with it.

3.  That the approval of this wireless telecommunications facility is necessary for the public
    health, safety, convenience or welfare. This facility contributes to an enhanced wireless
    network for increased clarity, range, and system capacity, and therefore, is a benefit to both
    public and private users.

## RECOMMENDED CONDITIONS OF APPROVAL

Planning Department

1.  This approval applies only to the proposal as described in this report and plans and
    documents submitted to the Planning Department on July 14, 2000, and will require the
    relocation of the monopole and antennas located just south of the property line to a new
    monopole located at least 10 feet from the side property line. Minor adjustments to the
    project in the course of applying for building permits may be approved by the Community

**AR 0428**

052

Development Director if they are consistent with the intent of and in substantial conformance with this approval.

2. This use permit shall be valid for a five-year period and shall expire on January 4, 2012. The applicant shall file for a renewal of this permit six months prior to the expiration with the County Planning and Building Department, if continuation of this use is desired. Any modifications to this facility will require a use permit amendment. If an amendment is requested, the applicant shall submit the necessary documents and fees for consideration at a public hearing.

3. The monopoles and antennas shall be repainted and maintained in the originally approved color: "enviro-green." Metal fencing with green plastic slats shall be maintained in good condition. Any proposed change to the color shall be reviewed and approved by the Planning Department prior to painting. Any new color proposed shall blend with the character of the site and the vegetation in the vicinity.

4. The installation shall be removed in its entirety at that time when this technology becomes obsolete or this facility is no longer needed.

5. The landscape and irrigation plan dated April 20, 2004 and received by the County on April 29, 2004 (Attachment E), and as modified with the approval of Planning staff, shall be installed and verified by Planning staff within three months of the renewal of this use permit. In addition, there will be administrative reviews one year and three years after the January 4, 2007 approval for compliance with this condition. Failure at the time of any administrative reviews of this condition will require a public hearing with the Zoning Hearing Officer at the County's earliest opportunity. The applicant shall maintain the landscaping for the duration that the facilities are located on the site and replace any dead plant material immediately.

California Department of Forestry

6. Maintain around and adjacent to such buildings or structures a fuelbreak/firebreak made by removing and clearing away flammable vegetation for a minimum distance of 30 feet. Remove that dead or dying portion of any tree that extends over the any structure.

7. All buildings and structures must have an address posted in such a location and in such a manner that it can be easily seen while traveling in both directions on the main road day or night. Numerals shall be contrasting in color to their background and shall be no less than 4-inches in height, and have a minimum stroke of 3/4-inch.

8. All proposed enclosed structures on the site shall be equipped with an approved FM 200 fire protection system or equivalent which shall be maintained for the duration of the use permit.

**AR 0429**

053

9.  Access must be provided from the street to the access gate at the proposed site.  The access must be provided in such a manner that emergency crews can get emergency medical equipment and fire fighting equipment to the scene.

10.  The project site shall remain accessible at all times.  If an entry gate is installed, then a Knox Box is required at the entry gate to allow emergency personnel access to the site in case of an emergency.  Contact the County Fire Department at 650/573-3846 for details.

11.  This approval applies only to the proposal, documents, and plans described in this report and submitted to and approved by the Zoning Hearing Officer on July 14, 2000, and to the documents and plans associated with the use permit renewal approved by the Zoning Hearing Officer on January 4, 2007.

<u>Building Inspection Section</u>

12.  The new monopole will require a building permit prior to commencement of construction.

MHA:MJS:fc – MHAR0030_WFU.DOC

054

**AR 0430**

COUNTY OF SAN MATEO
PLANNING AND BUILDING DEPARTMENT    PROJECT FILE

**DATE**: May 9, 2007

**TO**:        Planning Commission

**FROM**:    Planning Staff

**SUBJECT**:    <u>EXECUTIVE SUMMARY</u>:  Consideration of a Use Permit renewal to allow the continued operation of a cellular communications facility consisting of two 13-foot-tall monopoles and one equipment enclosure measuring 18 feet by 15 feet located in the rear yard of the residential property located at 1175 Palomar Drive in the unincorporated Palomar Park area of San Mateo County.  (Appeal from decision of the Zoning Hearing Officer to approve this renewal.)

## PROPOSAL

The applicant (Sprint Spectrum L.P.) is proposing to renew their use permit for an existing wireless communications facility in the rear yard of an existing single-family home at 1175 Palomar Drive. The system consists of two monopoles and one equipment cabinet enclosure. The cellular antennas are attached to the 13-foot-tall monopoles located on the southeast and northwest sides of the parcel. The equipment cabinet is located in the rear portion of the yard, adjacent to an existing T-Mobile cellular facility. The total area of the cabinet enclosure is 270 sq. ft., and is surrounded by a 6-foot high metal fence with green plastic slats.

## RECOMMENDATION

That the Planning Commission deny the appeal and uphold the decision of the Zoning Hearing Officer, County File Number PLN 2000-00497, by making the required findings and subject to the Conditions of Approval.

## SUMMARY

This Use Permit was initially approved by the Zoning Hearing Officer (ZHO) on November 17, 2000. It was the second cellular facility to be approved on this parcel. No appeals were filed at that time. The renewal of this Use Permit was first heard by the ZHO on December 7, 2006. After considerable public testimony and discussion, the ZHO continued the item so that the applicant could install the required landscaping and for staff to investigate the following items:

1.  *Verify the installation of the approved landscaping plan that was previously required.*

2.  *Revise the recommended conditions so that they stand alone and are not tied to or dependent upon any other proposal for this site.*

**AR 0431**

3. *Reevaluate the visual impact and other neighborhood compatibility issues relevant to the existing operation and recommend any new or revised conditions as necessary.*

4. *Identify the appropriate zoning setback requirement for the antenna pole to be relocated.*

5. *Provide original approval letter and original staff report from the initial (2000) use permit approval.*

For the January 18, 2007 hearing, staff responded to the above items. Based upon the additional evidence, the ZHO approved the renewal of this Use Permit.

Regarding the subsequent appeal, the main issues raised in this appeal are: (1) the permit holder (Sprint PCS) has failed to comply with conditions of approval, including construction of antennas in the wrong location, failure to implement a landscape plan in a timely manner, and failure to submit renewal fees and applications by the stipulated deadline; (2) perceived impacts to property values due to RF radiation; and (3) incompatibility of use with residential land use designation.

In response to these issues, staff has verified that the landscape plan was implemented prior to the ZHO's decision to renew the permit, staff has approved a revision to this project's open building permit which moves the antenna in question to its correct location, and renewal fees and applications were submitted. Regarding perceived impacts to property values, the cellular facility complies with standards established under Federal law and the County is preempted from applying different standards and criteria. Federal law and case decisions have established that claims related to market value must be supported by qualified expert evidence. Regarding the claim of incompatible use, there are many cellular facilities located within residential areas of County. Staff has found no evidence that this facility is inhibiting the use of this or neighboring parcels of land for residential use. No factual evidence has been presented that this facility has degraded the environment and staff has no evidence to support the suggestion that property values have been negatively impacted or that the economic stability of the area has been jeopardized.

MJS:kcd - MJSR0461_WKU.DOC

**AR 0432**

**COUNTY OF SAN MATEO**
**PLANNING AND BUILDING DEPARTMENT**

**DATE**: May 9, 2007

**TO**:        Planning Commission

**FROM**:    Planning Staff

**SUBJECT**:  Consideration of a Use Permit renewal, pursuant to Section 6500 of the County
Zoning Regulations, to allow the continued operation of a cellular communica-
tions facility consisting of two 13-foot tall monopoles and one equipment
enclosure measuring 18 feet by 15 feet located in the rear yard of the residential
property located at 1175 Palomar Drive in the unincorporated Palomar Park area
of San Mateo County.  (Appeal from decision of the Zoning Hearing Officer to
approve this renewal.)

County File Number:  PLN 2000-00497 (Sprint/Nextel)

## PROPOSAL

The applicant (Sprint Spectrum L.P.) is proposing to renew the use permit for an existing
wireless communications facility in the rear yard of an existing single-family home at 1175
Palomar Drive.  The system consists of two monopoles and one equipment cabinet enclosure.
The cellular antennas are attached to the 13-foot tall monopoles located on the southeast and
northwest sides of the parcel.  The equipment cabinet is located in the rear portion of the yard,
adjacent to an existing T-Mobile cellular facility.  The total area of the cabinet enclosure is
270 sq. ft., and is surrounded by a 6-foot high metal fence with green plastic slats.

## RECOMMENDATION

That the Planning Commission deny the appeal and uphold the decision of the Zoning Hearing
Officer, County File Number PLN 2000-00497, by making the required findings and subject to
the Conditions of Approval listed in Attachment A.

## BACKGROUND

Report Prepared By:  Michael Schaller, Senior Planner, Telephone 650/363-1849

Appellant:  Palomar Property Owners (Richard Landi, President)

Applicant:  Sprint Spectrum L.P.

**AR 0433**

Owner:  Curtis Brooks

Location:  1175 Palomar Drive, Palomar Park

APN:  051-416-040

Parcel Size:  22,858 sq. ft.

Existing Zoning:  R-1/S-101 (Single-Family Residential/20,000 sq. ft. min. parcel size)

General Plan Designation:  Low Density Residential (0.3 – 2.3 dwelling units per net acre)

Existing Land Use:  Single Family Home and Other Wireless Communications Facilities

Flood Zone:  Zone C (Area of Minimal Flooding); Community Panel No. 060311-0250B, Effective Date:  July 5, 1984

Environmental Evaluation:  Exempt from environmental review, pursuant to the California Environmental Quality Act (CEQA), Section 15301, Class 1, relating to the continued operations of an existing utility

Setting:  The project site is located on the west side of the street and is accessible from Palomar Drive.  The site is improved with a 1-story, single-family home and an existing T-Mobile cellular facility.  The surrounding uses are single-family homes.  The site is visible from Edgewood Road at Crestview, but the antennae and equipment compounds are painted to blend with the existing vegetation and are masked by both existing Monterey Pine and similar trees located behind the existing facilities.

Chronology:

| Date | | Action |
| --- | --- | --- |
| November 17, 2000 | - | Use Permit for Sprint cell site approved. |
| December 7, 2006 | - | First Zoning Hearing Officer (ZHO) public hearing to consider renewal of Sprint cell site Use Permit.  Item continued to January 18, 2007. |
| January 18, 2007 | - | ZHO approves renewal of Sprint Use Permit. |
| February 1, 2007 | - | Appeal filed. |
| May 9, 2007 | - | Planning Commission public hearing. |

**AR 0434**

## DISCUSSION

### A.  BACKGROUND

The project parcel is 22,858 sq. ft. in size and contains a 2,330 sq. ft. house.  The rear portion of the parcel is heavily forested, with additional trees recently planted to comply with previous conditions of approval.  The first cell facility (Pac Bell, now Cingular) on this parcel was approved on May 15, 1997.  This original permit was renewed by the ZHO at a public hearing on October 29, 2002.  The Sprint facility was initially approved on November 17, 2000.  Currently, there are two additional permit applications before the ZHO to construct two more cell facilities on this parcel.  Metro PCS has proposed a facility comprised of three antennas centered at 13 feet above ground level on two poles, and associated equipment cabinets.  The proposed location of the Metro PCS equipment cabinets is immediately to the east (closer to the house) of the Sprint equipment area.  Verizon has also proposed a facility comprised of three antennas on three poles with associated equipment cabinets.  Two poles would be 17 feet in height while the third pole would be 25 feet in height.  The proposed location of the Verizon equipment cabinets is immediately south of the Sprint equipment area.

### B.  KEY ISSUES OF THE APPEAL

Below in **bold** is a list of relevant appeal issues as presented by the appellant.  The submitted appeal is also attached to the staff report as Attachment B.  Each relevant issue is followed by staff's response.

1.  **We are not convinced that the findings of the Zoning Hearing Officer established the legality of the original cellular facility upon which all of the subsequent operating permits were based as "existing facilities."  The earliest reference to the existing facility is in the November 2, 2000 hearing which states that on May 22, 1997 Use permit approved by the Zoning Hearing Officer for the "existing Pacific Bell Cellular facility."  How did the Pacific Bell Cellular facility get there?  If the Hearing Officer cannot produce any evidence of an original permit or zoning approval, the existing antenna installation at 1175 Palomar Drive constitutes an illegal zoning nonconformity.**

    Staff's Response:  On May 15, 1997, the ZHO conditionally approved USE 97-0005 (applicant: Pac Bell) to construct a cellular facility on the project site.  This Use Permit was then renewed in 2002 at a public hearing.  The reference number for this Use Permit is now PLN 2001-00801.  The project file is available for public review.  A building permit for this cellular facility was issued on June 20, 1997 and was finaled on July 15, 1997.  The Pac Bell facility is legal.

2.  **The subject request should be for a "Use Permit" instead of "Renewal" as the present system is operating without a valid Use Permit.  On November 2, 2000, a Use Permit was issued for a 5-year period expiring on November 2, 2005.  The Use Permit contained the additional stipulation that "The applicant shall file for**

AR 0435

a renewal of this permit six months prior to the expiration date with the County Planning and Building Department if continuation of this use is desired." The renewal application was submitted on February 23, 2006, almost ten months beyond the specified time for renewal and four months after the expiration of the Use Permit. The application for renewal is invalid.

Staff's Response: While the above is true, all Use Permits are typically allowed to continue to operate unless the County proceeds through a legally noticed revocation process. The rationale supporting this policy is to avoid claims of violating the potential vested rights of the permit holder.

3. Site conditions as required by the Use Permit issued in year 2000 have never been met. One of the two antennae poles is located approximately 4 feet from the approved plan location, violating setback requirements as well as the approved plan and is physically located on a neighbor's property.

Staff's Response: It is true that the pole in question does not conform to the originally approved plans. The applicant has requested to relocate the pole in conformance with the original building permit (BLD 2000-01628) that is still being processed and this request has been approved by the Community Development Director. The applicant has agreed to remove the facility altogether if the use permit is not renewed.

4. The landscape plan approved as part of the cell sites building permit on May 14, 2004 was never implemented during the time period of the Use Permit.

Staff's Response: It is true that the above-referenced landscaping was not installed and completed prior to the December 7, 2006 ZHO hearing. At that hearing, the ZHO continued deliberations on the permit renewal until the applicant had installed the required landscaping. This was accomplished during the week of December 23, 2006.

5. Regardless of the actual level of the Radio Frequency emissions and the assurance of the operators of such systems that there is no problem, the neighbors in the area and general public are concerned about the effect on them and their children and if at all possible remove themselves from the area. Property values do decline and people are inconvenienced.

Staff's Response: The project complies with standards established under Federal law and the County is preempted from applying different standards and criteria. Additionally, recent case law has established that claims related to a decline in property value must be supported by qualified experts.

6. Property values also decline due to the presence of antennas and enclosures in their neighborhoods as evidenced by the requirements for special landscaping, shapes and colors to prevent the neighbors and general public from seeing the equipment. It was reported by staff that no comments concerning this site were

**AR 0436**

received from the public during the Use Permit period but as noted earlier the requirement for landscaping was imposed in 2004 in response to public protest.

Staff's Response: The Planning Department typically requires the planting of landscaping and the use of colors compatible with the surrounding landscape for all types of permits, including single-family houses and accessory structures. The fact that the building permit approval included landscaping requirements around the equipment structure does not mean the visual impacts were unusually significant.

7.  **Related to this site, two contiguous landowners have both presented evidence of property sales that were not consummated due to prospective `uyers' concerns about the wireless facilities. This is evidence of direct injury to property owners, but this evidence has so far been completely ignored in the staff reports and the proposed findings.**

Staff's Response: At the December 7, 2006 ZHO hearing, Lloyd and Sally Einspahr (1165 Palomar Drive) submitted comments on two associated projects on that meeting's agenda in which they state that they lost the sale of their home in June, 2005 because of concerns regarding low-level radio frequency radiation from the cell site. No evidence was submitted substantiating that statement. Federal law and case decisions have provided that claims related to market value must be supported by qualified expert evidence. Regarding the other claim, Alicia Torre of 1354 Pebble Drive (adjacent parcel to the north) submitted written comments at the January 18, 2007 hearing. In her comments, Ms. Torre states that "(her) realtor informed her that the previous owners lost a sale to a couple who rescinded their written off because of their concerns about the cellular installations." Again, no actual data has been submitted to substantiate this claim. Staff reviewed the Assessor's database for Ms. Torre's property and it should be noted that 1354 Pebble Drive has been sold twice since the approval of the first cell facility, and each time, the sale price has increased.

8.  **No evidence has been presented proving that this particular site is necessary for the public health, safety, convenience or welfare of the public. The staff report only asserts that it would result in an "enhanced network" which is a "benefit." This site is not unique in its ability to provide the desired wireless service to this area. Sites are available that are not within the area zoned R-1/S-101/DR and it is not evident that the applicant has been required to carry out this investigation. Residential areas should not be violated in order to provide enhanced operation to commercial entities.**

Staff's Response: This facility provides coverage in Sprint's cellular network. The information presented by the applicant indicates that without this particular site, Sprint's network has a significant hole in this area, which is due to the surrounding topography. There was discussion of this issue at the ZHO hearings.

In order for cellular technology to work properly, cell sites need to be in the direct line of sight of each other. Attempting to place this facility in nearby open space areas

- 5 -

**AR 0437**

such as Edgewood County Park or Pulgas Ridge Open Space Preserve could require extensive grading and vegetation removal, and may not work anyway if the antennas cannot communicate directly with each other.

In the case of an area wide catastrophic event, such as a major earthquake or wildland fire, the public's ability to have mobile communications, regardless of their location, is of paramount importance.

9. **In support, the General Plan although it does not speak specifically about cellular facilities, it does state that the urban area design concept should "ensure that new development in urban areas is designed and constructed to contribute to the orderly and harmonious development of the locality" (4.35b); that land use designations should be distributed "in order to achieve orderly, understandable, coherent, and workable land use patterns" (7.7); and that land use compatibility should "protect and enhance the character of existing single-family areas" and "protect existing single-family areas from adjacent incompatible land use designations which would degrade the environmental quality and economic stability of the area" (8.14). These facilities under consideration, are money-making ventures for the property owners who earn annual fees for allowing this use of their property, unlike electrical, telephone and gas lines.**

Staff's Response: Regarding the first policy cited (4.35b), the applicant has been required to install and maintain landscaping to screen the facility. The antennas and poles must be painted so that they blend in with the landscaping. The equipment cabinets must be enclosed within a fenced area to screen them from view. All of these measures have been required to ensure that the facility will not be disruptive. Concerning the second policy (7.7), no evidence has been presented that the facility is inhibiting the use of this or neighboring parcels of land for their primary designation, which is residential. Regarding the final policy cited (8.14), staff is not aware of any factual evidence that has been presented indicating how this facility has degraded the environment (no evidence of air or noise pollution, destruction of sensitive habitat, etc.) and staff has no evidence to support the suggestion that property values have been negatively impacted or that the economic stability of the area would be jeopardized.

10. **Does the Building Site Coverage Area Ratio adhere to the requirements in Section 6300.10.50?**

Staff's Response: Yes, the S-101 zoning district allows a maximum lot coverage of 25%. For the subject parcel, this translates into a maximum lot coverage of 5,714 sq. ft. The existing house, plus the two existing cell sites have a combined lot coverage of 2,355 sq. ft.

11. **Does the Building Floor Area adhere to the requirements of Section 6300.10.60?**

AR 0438

Staff's Response: Yes, the S-101 zoning district allows a maximum floor area of 6,457 sq. ft. for a parcel of this size. The existing house, plus the two existing cell sites have a combined floor area of 2,355 sq. ft.

12. **There are indications that there are building permit violations on the property. Section 6105.1 stipulates that no permit may be issued for any property that has existing building or zoning violations. As such, the permits must be withheld.**

Staff's Response: As discussed above under Comment No. 3, there is an open building permit for this facility. One of the poles in question was incorrectly placed on an adjacent parcel. The applicant has requested permission to move this pole back to the approved location on Mr. Brooks' property and the Planning Department has granted this request. Once the pole is relocated, the project will again be in compliance with the conditions of approval.

13. **There can be found no evidence that this facility was reviewed by the Design Review Committee, which is required prior to issuing a building permit.**

Staff's Response: Cellular facilities have historically not been reviewed by the Design Review Committee, which focuses on residential and some commercial development in specified areas. The design standards for Palomar Park contained in the zoning regulations do not necessarily pertain to this type of structure as they focus on standards, such as building façades and roof treatments. The Zoning Hearing Officer is charged with reviewing all aspects of a project, including its compliance with the visual resource policies of the General Plan and, where applicable, the design review standards contained within the Zoning Regulations. In approving this project, the Zoning Hearing Officer found that the project complies with all aspects of the General Plan and the Zoning Regulations.

C. COMPLIANCE WITH CONDITIONS OF THE LAST APPROVAL

The conditions from the approval of the use permit in 2000 are assessed below with regard to compliance, and whether the conditions should either be retained or revised. Staff recommends that some conditions, as indicated, be removed in instances where the condition: (1) has been complied with, and/or (2) is no longer deemed feasible or necessary.

Planning Department

1. This approval applies only to the proposal as described in this report and plans and documents submitted to the Planning Department on July 14, 2000. Minor adjustments to the project in the course of applying for building permits may be approved by the Community Development Director if they are consistent with the intent of and in substantial conformance with this approval.

   *Compliance with Condition?* No. One of the two antennae poles was initially constructed approximately 4 feet from the approved location and was outside the

**AR 0439**

property line. However, on April 12, 2007, the Planning Department approved a
revision to the applicant's still open building permit to move the pole in question to its
approved location. In addition, at the time of the December 7, 2006 ZHO hearing, the
applicant had not implemented the landscape plan approved as part of this cell site's
building permit on May 14, 2004 (Attachment E). The ZHO continued this item
subject to installation of the landscaping, which was completed by the applicant during
the week of December 25, 2006.

*Recommend to Retain Condition?* Yes.

2.    The applicant shall obtain a building permit and develop in accordance with the
approved plans.

*Compliance with Condition?* No. A building permit was issued and, as of the writing
of this staff report, has not been finalized for the cell facility.

*Recommend to Retain Condition?* Yes, but modified as follows: The applicant shall
complete all aspects of the building permit within 4 months of Use Permit Renewal.

3.    This Use Permit shall be valid for a 5-year period and shall expire on November 2,
2005. The applicant shall file for a renewal of this permit six months prior to the
expiration with the County Planning and Building Department, if continuation of this
use is desired.

*Compliance with Condition?* No. The renewal application was only submitted on
February 23, 2006, after a third and final renewal notice was sent extending the
deadline to February 27, 2006.

*Recommend to Retain Condition?* Yes, but modified to:

This Use Permit shall be valid for a 10-year period and shall expire on May 9, 2017.
The applicant shall file for a renewal of this permit six months prior to the expiration
with the County Planning and Building Department, if continuation of this use is
desired. Any modifications to this facility will require a use permit amendment. If an
amendment is requested, the applicant shall submit the necessary documents and fees
for consideration at a public hearing.

State legislation recently signed into law by the Governor has now extended the life
span of all Use Permits for cellular facilities to 10 years. This condition has been
modified to reflect that change in State law.

4.    The monopoles, antennas, and fencing shall be painted the same "enviro-green" color
as the existing Pacific Bell equipment cabinet. A color sample shall be submitted to
the Planning Counter prior to building permit issuance. The applicant shall include
file/case number with all color samples. Color verification by a building inspector

**AR 0440**