IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT SPECTRUM L.P. and SPRINT SPECTRUM REALTY CO.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>    Defendants.<br>_____/ | No. C 08-0342 CW<br>No. C 11-0056 CW<br><br>ORDER RESOLVING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Case No. 08-0342, Docket No. 97; Case No. 11-0056, Docket No. 52) |

Plaintiffs Sprint Spectrum L.P. and Sprint Spectrum Realty Company, L.P. (collectively, Sprint) brought these related actions under the Telecommunications Act of 1996 (TCA), 47 U.S.C. § 332, against Defendants County of San Mateo and its Board of Supervisors. Plaintiffs now move for partial summary judgment in both actions. Defendants oppose both motions. After considering the parties' submissions and oral argument, the Court grants both of Plaintiffs' motions.

## BACKGROUND

The following facts are undisputed except where otherwise noted. All facts are taken from the Administrative Record (AR) submitted by the parties in June 2011. Case No. 11-0056, Docket No. 32.

Sprint is a national provider of wireless communications services. In 2000, it acquired a use permit from the County of San Mateo to operate a telecommunications facility in Redwood City's Palomar Park neighborhood. The facility, which consists of two thirteen-foot monopoles and a six-foot equipment cabinet, sits

in the backyard of a single-family home on Palomar Drive. Although Sprint's original permit expired in November 2005, the County extended Sprint's deadline to submit a renewal application by three months. AR 6-7. Sprint submitted its renewal application in February 2006. Id. at 4-5.

In January 2007, the County's zoning hearing officer granted Sprint's application to renew its permit for the Palomar Drive facility. Five months later, however, the County Planning Commission overturned the hearing officer's decision, denying Sprint's application. Id. at 458-63, 380-81. In June 2007, shortly after the Planning Commission issued its decision, Sprint appealed the denial to the County's Board of Supervisors, the County's ultimate arbiter for such permits. Id. at 302.

The Board held a hearing on the appeal in early October 2007 but, based on information submitted at the hearing, deferred its decision on the matter so that Sprint could examine possible locations for its facility other than the Palomar Drive site. Id. at 350. The Board also directed its own staff, in the interim, to assess what effect the removal of Sprint's Palomar Drive facility and the resulting change in wireless coverage might have on public safety in the area. Id.

Sprint submitted its "alternative sites study" to the Board the following week. Id. at 311-15. The report examined four alternative sites for Sprint's facility and concluded that each was inferior to the Palomar Drive location. Id. The Board's staff then sent Sprint a list of follow-up questions about the report, which Sprint answered in November 2007. Id. at 325-27.

2

In December 2007, the Board denied Sprint's appeal. Id. at 272-73. The Board's decision was based on two findings:

> 1. That the permit holder, Sprint Spectrum L.P., failed to comply in a timely manner with conditions of approval established in 2000. Specifically, Sprint failed to install required landscaping and relocate a misplaced pole prior to expiration of the original use permit. Sprint Spectrum L.P. also failed to submit a request for permit renewal prior to the expiration date of the original permit.
>
> 2. That the permit holder, Sprint Spectrum L.P., failed to show that alternative sites or a combination of sites could not achieve the same results as this site in question.

Id. Six weeks later, in January 2008, the Board sent Sprint a letter reiterating these findings and directing Sprint to obtain a demolition permit for the facility. Id. at 270-71.

Later that month, Sprint filed the first of these actions against the County and its Board, charging them with various violations of the TCA. Case No. 08-0342, Docket No. 1, Complaint. In early 2009, after more than a year of negotiations, the parties reached a contingent settlement agreement. Case No. 08-0342, Docket No. 48, Joint Status Report Re: Settlement, at 1. Under the terms of that settlement, the Board agreed to reconsider Sprint's permit application. Id. In September 2009, after holding another hearing on the matter, the Board denied Sprint's renewal application for a second time. Declaration of Benjamin Z. Rubin, Ex. 1, Final Notice of Local Decision, at 1. In its decision, the Board explained, "Based on information provided by staff and evidence presented at the hearing, the Board of Supervisors denied the appeal of the Planning Commission's ruling,

3

and revoked the Use Permit for the referenced cellular communications facility." Id.

One month later, in October 2009, Sprint filed the second of these lawsuits, challenging the County's 2009 denial under the TCA. Case No. 09-5022, Docket No. 1, Complaint. The two cases were consolidated the following week. Shortly thereafter, in November 2009, Sprint filed an amended complaint in the 08-0342 action challenging both the 2007 denial and the 2009 denial under the TCA. Case No. 08-342, Docket No. 59.

In June 2010, as part of their ongoing efforts to resolve these disputes, the parties reached another contingent settlement under which Sprint agreed to amend its application to seek a permit for just one monopole -- rather than two -- in exchange for another hearing on the matter before the Board. AR 687. The Board held the hearing on December 7, 2010 and voted once again to deny Sprint's application. Id. at 780. Less than a week after the hearing, it issued a one-sentence explanation for its decision nearly identical to the explanation it offered in 2009: "Based on information provided by staff and evidence presented at the hearing, the Board of Supervisors voted to deny the renewal of this Use Permit (3-0 vote)." Id.

One month later, in January 2011, Sprint filed the third of these actions challenging the County's decision under the TCA. Case No. 11-0056, Docket No. 1, Complaint. The Court related the case to the consolidated actions that Sprint previously filed against the County.

In May 2013, after two more years of unsuccessful settlement negotiations, Sprint filed the instant motions.

4

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential

5

> element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

## DISCUSSION

Congress enacted the TCA in order to "promote competition and higher quality in American telecommunications services." City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115 (2005). One of the means by which the statute aims to achieve this goal is by reducing "the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." Id. Accordingly, local governments must comply with several provisions of the TCA when issuing permits to operate wireless telecommunications facilities.

Here, Sprint alleges that the County violated two of these provisions when it denied Sprint's applications for a renewal permit: namely, the "in writing" provision and the "effective prohibition" provision.[1] Each of these provisions is discussed in greater depth below.

I. "In Writing"

The TCA's "in writing" provision states, "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

---

[1] Although Sprint asserts claims challenging the County's permit denials under other provisions of the TCA, it only moves for summary judgment on its claims under these two provisions.

6

To satisfy this provision, a local government must "issue a written decision separate from the written record which contains sufficient explanation of the reasons for the decision to allow a reviewing court to evaluate the evidence in the record supporting those reasons." MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 723 (9th Cir. 2005).  While local governments need not "explicate the reasons for their decision and link their conclusions to specific evidence in the written record," they must nevertheless provide more than an "opaque, unelaborated ruling." Id. at 721-22.

In addition, to satisfy the "in writing" provision's "substantial evidence" requirement, the written permit denial must be both "authorized by local law" and "supported by a reasonable amount of evidence." Sprint PCS Assets, LLC v. City of Palos Verdes Estates, 583 F.3d 716, 721 (9th Cir. 2009).  "Review under this standard is essentially 'deferential,' such that courts may 'neither engage in [their] own fact-finding nor supplant the [local government]'s reasonable determinations.'" MetroPCS, 400 F.3d at 725 (citations omitted).

Although the County's 2007 permit denial satisfies the TCA's "in writing" provision, its 2009 and 2010 permit denials do not.

A.   2007 Denial

As noted above, the Board sent Sprint a written letter in December 2007 highlighting two findings as the basis for its permit denial: first, the Board found that Sprint failed to comply with the terms of its previous permit because it submitted its application for a renewal permit three months late and failed to relocate a monopole and install certain landscaping; second, the

7

1 Board found that Sprint failed to consider alternative sites for
2 its facility that might provide the same level of coverage as the
3 Palomar Drive location. AR 272-73. Because the second of these
4 written findings was authorized by local law and supported by
5 reasonable evidence, it is sufficient to satisfy the "in writing"
6 provision.

7 Section 6500 of San Mateo County's Zoning Regulations
8 provides that the County may issue a use permit for any facility
9 "found to be necessary for the public health, safety, convenience
10 or welfare." Id. at 639. Here, the record before the Board in
11 2007 contained evidence that the Palomar Drive facility was not
12 necessary for the safety, convenience, or welfare of the
13 community. One of the Board's staff members, Lisa Grote,
14 submitted a report in December 2007 finding that Sprint had
15 "failed to adequately examine and analyze alternative locations,
16 either suggested by staff or in their own reports." Id. at 287.
17 Grote specifically found that Sprint's alternative sites study
18 failed to examine possible alternative sites within Big Canyon
19 Park and the Hetch Hetchy Pipeline property. Id. She also noted
20 that Sprint's study failed to consider whether a combination of
21 facilities at multiple sites might achieve the same results as the
22 Palomar Drive facility. Id.

23 Grote's staff report thus offered sufficient evidentiary
24 support for the Board's 2007 finding that Sprint failed to
25 consider a sufficient number of alternatives to the Palomar Drive
26 location. This finding, in turn, provided a reasonable basis for
27 the Board to conclude that the Palomar Drive facility was not
28 "necessary for the public health, safety, convenience or welfare"

8

under section 6500 of the County Zoning Regulations.  Id. at 639.
Thus, because this finding was written, supported by a reasonable
amount of evidence and authorized by local law, the Board's 2007
denial letter satisfies all the requirements of the "in writing"
provision and Sprint is not entitled to summary adjudication of
its claim that the 2007 denial violates this provision of the
TCA.[2]  This conclusion does not preclude the relief Sprint seeks,
however, for the reasons discussed next.

B.   2009 Denial

Unlike the 2007 denial, the Board's 2009 denial does not
satisfy the "in writing" provision because it was not supported by
a reasonable amount of evidence.  As noted above, Sprint submitted
additional evidence to the Board after the 2007 denial to address
the specific concerns that Grote raised in the initial staff
report.  Most importantly, Sprint submitted an amended version of
its alternative sites study to bolster its earlier claims about
the gaps in its wireless service coverage.  It also made various
physical improvements to the Palomar Drive facility itself to

---

[2] It is not clear from the record that the Board's 2007 denial even qualifies as a "final" decision subject to challenge under the TCA.  As noted above, the Board agreed to reconsider Sprint's renewal application -- and even held additional hearings on the matter -- after it issued the 2007 denial.  It also allowed Sprint to continue operating the Palomar Drive facility during that period.  In similar circumstances, other courts have held that service providers cannot challenge a local government's decision under the TCA if the government is still considering the provider's application and the facility in question remains "up and running."  Nextel Commc'ns v. City of Margate, 305 F.3d 188, 193 (3d Cir. 2002) ("[M]erely reopening the hearings, without more, does not violate the Telecommunications Act."); Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1004 (7th Cir. 2004) ("Indeed, until Sprint is told definitely whether or not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of [under the TCA].").  Nevertheless, the Court will consider the Board's 2007 denial as a final decision for the purposes of this order.

9

address certain aesthetic concerns which the Board raised during previous hearings.

In light of these updates to Sprint's application, Grote issued a revised staff report in August 2009 in which she reversed her earlier position and recommended that the Board grant Sprint's request for a renewal permit. Her revised report stated,

> In view of the [2009] alternative sites analysis, which was not available to the Board prior to its vote to deny the permit in December 2007, there is substantially more evidence to support the required findings . . . that the use authorized by the permit would be "necessary for the public health, safety, convenience or welfare."

AR 655 (quoting section 6500 of the County Zoning Regulations). The report concluded that the Palomar Drive facility "contributes to an enhanced wireless network for increased clarity, range, and system capacity" and that its removal "would significantly impact the public's ability to communicate with the Emergency-911 network." Id. at 656. Based on this analysis, Grote recommended that the Board adopt a finding that the "facility is considered necessary for the public health, safety, convenience, and welfare, particularly in the case of a large-scale natural disaster, such as an earthquake or wildland fire." Id. at 656. Despite Grote's recommendation, however, the Board denied Sprint's permit application in September 2009.

The Board's 2009 denial letter was devoid of specific fact findings. See Rubin Decl., Ex. 1, at 1. The letter contained only one sentence explaining the Board's decision and made no reference to the expanded administrative record. Furthermore, even though the letter cited "information provided by staff" as

10

one of the evidentiary bases for the Board's decision, the letter failed to acknowledge that the staff itself had recommended granting Sprint's permit request. Id. In short, the denial resembles the kind of "opaque, unelaborated ruling" that the Ninth Circuit has deemed insufficient to satisfy the TCA. MetroPCS, 400 F.3d at 722 ("If such an evidentiary review is to be undertaken at all, courts must at least be able to ascertain the basis of the zoning decision at issue; only then can they accurately assess the evidentiary support it finds in the written record.").

The County has not identified any evidence in the administrative record that would have plausibly supported the Board's 2009 decision to reject its own staff report. Although it now contends that Sprint's alternative sites study "was the subject of extensive criticism by members of the public," Case No. 11-0056, Docket No. 53, Defs.' Opp., at 2 (citing AR 740-79), it has not presented any evidence to suggest that the Board actually received any of this "public criticism" before it issued the 2009 permit denial. Two of the documents which the County claims were submitted by the public -- a letter from a local property owners' association and an article from a local newspaper -- are both dated November 2010, more than a year after the Board issued its 2009 denial letter. AR 775-79.[3] The other document -- an unlabeled PowerPoint presentation submitted by the same property owners' association -- is not dated at all, id. at 740-71, and the

---

[3] The November 2010 letter alludes to a letter that the property owners' association purportedly submitted before the 2009 hearing; however, the administrative record does not contain a copy of any such letter and the County stated at oral argument that it was not aware of a 2009 letter from the property owners' association and could not locate the letter in the County's records.

11

County conceded at oral argument that it is not certain when this presentation was submitted or whether it was even presented at the Board hearing. In any event, none of the documents submitted by the public contains sufficient information to contradict the analyses in Grote's revised staff report and Sprint's expanded alternative sites study.[4]

Although the County contends that the findings from the Board's 2007 decision provide sufficient evidentiary support for its 2009 decision, the Board did not cite any of these findings in its 2009 denial letter. What's more, as previously explained, the Board's 2007 findings were based on the initial staff report that Grote submitted in December 2007 before she reviewed Sprint's expanded alternative sites study and revised her findings. However, because Grote reversed her position in the revised staff report -- and expressly recommended that the Board grant Sprint's permit application -- any findings based on her prior report would not provide a reasonable basis for the Board's decision two years later.

Nor does the Board's other finding, regarding Sprint's failure to comply with the terms of its prior permit application, support its 2009 decision. The administrative record -- specifically, Grote's 2007 staff report -- makes clear that Sprint had already satisfied the landscaping and pole-relocation

---

[4] The undated PowerPoint presentation, for instance, consists of a series of unintelligible coverage maps and photographs with scant explanation of what they are supposed to show. Similarly, while the November 2010 letter refers to "data" from coverage tests conducted by other wireless service providers, it does not provide that data nor any other means of verifying its accuracy. The newspaper article does not provide any information about Sprint's specific proposal or its impact on wireless coverage in the area.

12

1 requirements of its prior use permit by the time the Board issued
2 its 2009 denial. Id. 289-90 (noting that the "installation of the
3 landscaping . . . was completed by the applicant during the week
4 of December 26, 2006" and "the pole in question was finally moved
5 to the correct location on April 12, 2007"). The record also
6 makes clear that the County extended Sprint's deadline to apply
7 for a renewal permit and that Sprint ultimately submitted its
8 application within three months of its original deadline. AR 1A-
9 2, 4-7, 205, 289. These brief delays do not provide grounds for
10 denying the permit under the local zoning regulations because they
11 do not suggest that the Palomar Drive facility was not "necessary
12 for the public health, safety, convenience or welfare." Id. at
13 639; see generally MetroPCS, 400 F.3d at 724 ("[W]e must take
14 applicable state and local regulations as we find them and
15 evaluate the City decision's evidentiary support (or lack thereof)
16 relative to those regulations." (emphasis added)).

17 Finally, the County argues that the Board's September 2009
18 letter should not be construed as a denial of Sprint's permit
19 application but, rather, as a denial of Sprint's request to
20 reconsider the 2007 permit denial. This argument is untenable.
21 Both the administrative record and the 2009 contingent settlement
22 between the parties illustrate that the Board had already agreed
23 to reconsider Sprint's permit application before it issued the
24 2009 letter. The parties filed a joint status report on May 20,
25 2009, for example, which expressly stated that the County was
26 planning "to consider Sprint's application at a public hearing" as
27 part of the parties' settlement agreement. Case No. 08-0342,
28 Docket No. 48, at 2 (emphasis added). Grote's revised staff

13

1  report similarly stated that the Board had "agree[d] to hold new
2  public hearing [sic] to consider additional evidence by
3  applicant." AR 653. The report also recommended that the Board
4  "[a]pprove the use permit renewal." Id. at 650. Neither the
5  report nor any of the parties' filings in this litigation refer to
6  any pending request for reconsideration. The 2009 letter itself
7  states that it is a denial of Sprint's "appeal of the Planning
8  Commission's ruling." Rubin Decl., Ex. 1, at 1. Taken together,
9  these documents demonstrate that the Board's 2009 letter was
10 intended as a substantive ruling on the merits of Sprint's permit
11 application rather than merely a denial of a request to reconsider
12 the Board's 2007 decision. As such, the letter is subject to
13 challenge under the TCA.
14      In sum, the Board's 2009 denial of Sprint's revised permit
15 application does not satisfy the TCA's "in writing" provision.
16 Sprint is therefore entitled to summary adjudication of its claim
17 that the 2009 decision violates this provision.
18      C.   2010 Denial
19      As noted above, the Board's 2010 letter of denial is nearly
20 identical to its 2009 letter and relies on a similarly generic
21 one-sentence explanation of the Board's decision. See AR 780
22 ("Based on information provided by staff and evidence presented at
23 the hearing, the Board of Supervisors voted to deny the renewal of
24 this Use Permit."). Further, the County cites the same evidence
25 from the administrative record to support the Board's 2010
26 decision that it cited to support the Board's 2009 decision.
27 Accordingly, for the same reasons that the Board's 2009 decision
28

14

does not satisfy the "in writing" provision, the Board's 2010 decision likewise fails to satisfy this provision.

The 2010 decision fails for an additional reason, as well. The evidence that the County cites to support the Board's 2010 decision fails to address the fact that Sprint amended its permit application after the 2009 denial. As noted above, Sprint altered its permit request in 2010 to seek only one monopole for the Palomar Drive location, rather than two. The County has not identified any evidence to suggest that the Board took account of this change or even attempted to evaluate the difference between the wireless coverage provided by a single monopole and the coverage provided by two monopoles. Even the evidence submitted to the Board after Sprint amended its application -- such as the November 2010 letter from the property owners' association -- focuses on the data from coverage tests conducted in 2009, before Sprint narrowed its request. The County has not explained what relevance this evidence, which was originally submitted in opposition to Sprint's 2007 and 2009 permit requests, would have with respect to Sprint's request for a less intrusive telecommunications facility. Sprint is therefore entitled to summary adjudication of its claim that the Board's 2010 decision violates the TCA's "in writing" provision.

II. "Effective Prohibition"

The TCA's "effective prohibition" provision states: "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or

15

1 have the effect of prohibiting the provision of personal wireless
2 services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

3 In order to comply with this provision, local governments
4 must not prevent any service provider from filling a "significant
5 gap" in its wireless coverage. Sprint Telephony PCS, L.P. v.
6 County of San Diego, 543 F.3d 571, 580 (9th Cir. 2008) (en banc).
7 The Ninth Circuit has recognized that "'significant gap'
8 determinations are extremely fact-specific inquiries that defy any
9 bright-line legal rule." MetroPCS, 400 F.3d at 733. Courts
10 typically consider "a wide range of context-specific factors in
11 assessing the significance of alleged gaps," including the number
12 of users affected, the safety risks posed, and the residential or
13 commercial nature of the covered area. Sprint PCS, 583 F.3d at
14 727.

15 "[O]nce a wireless service provider has demonstrated that the
16 requisite significant gap in coverage exists, it must then make
17 some showing as to the intrusiveness or necessity of its proposed
18 means of closing that gap." MetroPCS, 400 F.3d at 734. To
19 satisfy this requirement, the provider must "show that 'the manner
20 in which it proposes to fill the significant gap in service is the
21 least intrusive on the values that the denial sought to serve.'"
22 Id. (quoting APT Pittsburgh LP v. Penn Township Butler County, 196
23 F.3d 469, 480 n.8 (3d Cir. 1999); emphasis omitted).

24 Thus, to demonstrate that the denial of a wireless permit
25 violates § 332(c)(7)(B)(i)(II), the provider must show both that
26 the denial prevents it from closing a "significant gap" in its
27 coverage and that the provider's proposal is the "least intrusive"
28 means of closing that gap. Sprint PCS, 583 F.3d at 726. Although

16

Sprint failed to make this showing with respect to the Board's 2007 permit denial, it has made this showing with respect to the 2009 denial.

A. 2007 Denial

Sprint's 2007 alternative sites study established that the removal of the Palomar Drive facility would likely prevent it from closing a "significant gap" in its wireless coverage. Sprint did not, however, demonstrate that its permit request proposed the least intrusive means of closing that gap. As noted above, Grote's 2007 staff report found that Sprint had failed to consider various alternatives to the Palomar Drive location. In light of this conflicting evidence as to the intrusiveness of Sprint's proposal, Sprint cannot show that the Board's 2007 decision was an "effective prohibition" under the TCA. It is therefore not entitled to summary adjudication of its claim that the 2007 decision violates the "effective prohibition" provision. Nevertheless, even though the 2007 decision satisfies both the "effective prohibition" and "in writing" provisions, this does not preclude the relief that Sprint seeks because the Board's 2009 decision violates both of these provisions, as discussed further below.

B. 2009 Denial

Unlike the evidentiary record before the Board in 2007, the 2009 record contained undisputed evidence that Sprint's Palomar Drive facility closed a significant gap in its coverage and that the continued operation of that facility was the least intrusive means of closing that gap. As explained above, Sprint's expanded alternative sites study and Grote's revised staff report, both of

17

which were submitted in 2009, established that Sprint's Palomar Drive facility was necessary for the public's health, safety, and convenience and was the least intrusive means of closing Sprint's coverage gap. The revised staff report specifically recommended that the Board adopt a finding that the "impacts from the continued operation of this facility, subject to the recommended conditions of approval, will be minimal." AR 655. Because the County has not presented any evidence to contradict this record, Sprint is entitled to summary adjudication of its claim that the Board's 2009 decision violates the TCA's "effective prohibition" provision, as well as its "in writing" provision.

C.   2010 Denial

The Board's 2010 permit denial was based on the same basic administrative record as its 2009 denial. As explained above, that record demonstrated that Sprint's Palomar Drive facility closed a significant gap in its wireless service coverage and that the Palomar Drive location provided the least intrusive means of closing that gap. Thus, the Board's 2010 denial constituted an effective prohibition on Sprint's wireless services for the same reasons that its 2009 denial did. Sprint is therefore entitled to summary adjudication of its claim that the 2010 denial violated the TCA's "effective prohibition" provision, as well as the "in writing" provision.

CONCLUSION

For the reasons set forth above, Plaintiffs' motions for partial summary judgment in both the 08-342 action (Docket No. 97) and the 11-0056 action (Docket No. 52) are GRANTED. An injunction directing the County to issue a use permit under section 6500 of

18

the Zoning Regulations shall issue separately.  The Court will file a proposed form of the injunction after this order has been entered.  Within seven days of the entry of the proposed injunction, Sprint may submit a brief of no more than eight pages providing comments and proposed changes to the injunction.  The County may submit a responsive eight-page brief, proposing its own comments and changes to the injunction, within seven days of Sprint's brief.  After reviewing these submissions, the Court will enter a final injunction in this matter.  The final injunction will be entered in the docket for both actions and resolve all of the claims on which Plaintiffs were granted summary judgment.

    The Court will hold a case management conference to discuss Sprint's remaining claims in both actions at 2:00 p.m. on Wednesday, January 8, 2014.  The parties shall therefore submit a joint case management statement by January 2, 2014 proposing trial dates for each action.  Alternatively, if Sprint does not wish to pursue its remaining claims in light of this order and the ensuing injunction, it may instead file a motion or stipulation dismissing those claims.  Final judgment will enter when all claims have been resolved.

    IT IS SO ORDERED.

Dated: 12/4/2013

CLAUDIA WILKEN
United States District Judge